(38 South. 164.)

No. 15,295.

FULLER v. TREMONT LUMBER CO. et al.*

(Jan. 30, 1905.)

INJURY TO EMPLOYÉ — NEGLIGENCE — FELLOW SERVANTS.

1. The action is for damages for a tort.

2. A log train running at an unusual rate of speed derailed from the track. On a down grade

*Rehearing denied March 13, 1905.

only part of the brakes worked and could be made to perform the usual functions of a brake.

3. The result was a dangerous rate of speed on a down grade.

4. While running down the grade, it came to a weak place in the track and derailed. The ties at this place had been made of poor timber; they were weak, decayed, and did not hold the spikes.

5. A railroad company must maintain a safe roadbed, undecayed and sound cross-ties, and see that the rails are in their proper position and level (Rutherford v. R. R. Co., 6 South. 644, 41 La. Ann. 793; McFee v. R. R. Co., 7 South. 720, 42 La. Ann. 790), or else, in case of an accident growing out of its unsafe condition which caused injury, it will be liable.

6. Where an injury results from the common negligence of the master and fellow servant, the fellow-servant doctrine does not absolve the master from liability.

(Syllabus by the Court.)

Appeal from Fourth Judicial District Court, Parish of Lincoln; Robert Brooks Dawkins, Judge.

Action by W. M. Fuller against the Tremont Lumber Company and others. Judgment for plaintiff, and defendants appeal. Amended and affirmed.

Price & Roberts and Stubbs & Russell, for appellants. Hudson, Potts & Bernstein and Clayton & Hawthorne, for appellee.

BREAUX, C. J. Personal injury arising from an accident is the complaint, and $10,000 the damage for which plaintiff sued.

The verdict was for $5,000. From the verdict and judgment of the court, the defendants have appealed.

One of the defendants, the Tremont Lumber Company, Limited, owns two sawmills, one at Tremont, the other at Eros, La., connected in running by a railroad company of their own worked jointly. With the aid of this railroad, Smith and Cartwright, as lumbermen, supplied these mills with logs, and they are the other defendants.

Plaintiff was employed by Cartwright and Smith as locomotive fireman. On the 24th of August, 1903, the logging train on which he was at work derailed.

McGrady, the engineer, and Farney, the brakeman, were with him on the train as employés of defendants. This train, it appears, consisted of the locomotive and tender, and seven flat cars loaded with pine logs. The complaint in regard to the manner that the train was loaded was that the ends of the pine logs extended over the ends of the cars and covered the handle of the brakes on each car, except one, thereby rendering the brakes useless, and placing it out of the power of the brakeman to apply his brakes to moderate the speed or stop the train.

There was a downward grade from the top of a hill to the place of the accident, which rendered the brakes an indispensable appliance.

At a point of the road at a downward grade, the engineer attempted to use his brakes, but failed by reason of the fact that the heavy logs rested on the handles of the brake. The speed of the train became great, and in consequence, at a sharp curve in the track, the rails turned over and spread out, owing to the decayed ties, which had been made of pin oak, red oak, and mixed wood of poor quality, instead of white oak and other good timbers. In consequence the locomotive and train took leave of the track, causing an immense jolt, which resulted in precipitating plaintiff to the ground, fastening and jamming him among the broken timbers of the cars and the logs, to his great injury and suffering. He was caught in the wreck and under the end of a log. The log was lying across his leg, and the leg was broken between the knee and the ankle.

The defendants in a joint answer denied liability, and said that plaintiff had no one to blame but himself and the engineer, his fellow servant.

Upon these issues the parties went to trial, and examined a number of witnesses.

Unquestionably, the general rule is that companies must make their railroad tracks safe, or, as some of the cases have it, rea-

sonably safe. Furthermore, when a railroad company permits the use of unsafe brakes, or loads its cars so that they are useless, and injury is the result, the injured party, if not at fault, is entitled to damages.

In order to determine whether or not this rule has application, we have examined the conflicting testimony. The plaintiff has testified at some length in his own cause, and sought throughout to sustain his petition. We will not dwell upon the quality of the brakes complained of by him. They were the regular vacuum brake, and nothing in the testimony shows that it was unsafe to use such. As to whether they were in good order is one of the puzzling questions of the case, for the testimony on this, as well as on other points, is irreconcilably divergent.

The engineer of the company, witness for defendant, who was in charge of the engine, testified that the brakes of the engine were not in a state of good repair. The manner of loading the train with logs suggests itself as of some importance in determining the issue. The average length of these logs was 16 feet, which were transferred to the car by machinery. It follows that some of the logs were long; others comparatively short. The cars, it must be said, were longer than the logs. This fact alone does not make it evident that the brakes were not covered by the logs. The defendant had a log loader. The logs were lifted to the car, and then this loader would drop them in position on the bunks. These log conveyances are skeleton cars. We understand that the pieces on the floor are the reaches, and the pieces where the logs rest are the bunks.

This laying of the logs in the car has some importance, because one of the issues is that the logs were not properly loaded, and that thereby the engineer was prevented, at the critical moment, from working the brakes. The engineer's testimony does not create the impression that the engine's brakes were very useful. We infer that they did not yield to the pressure, if any was brought to bear upon them.

The brakeman testified that brake 6 was not set by him because the logs were on it, or there was no brakestaff. In a lengthy examination he testified that all the other brakes were on, and that there was nothing deficient as relates to brakes. The 6th brake, as we understand, was considered by him somewhat as it is with the fifth wheel in a wagon.

One of the defendant's witnesses who was on this train testified that it was running at about the rate of 50 miles an hour at the time the train was wrecked. If that be the rate at which this log-loaded train was running, it is small wonder that, upon the train meeting an impediment, this witness was pitched over the front of the tender—to quote his words: "Rolled to the bottom, and got up, and walked back to the track. The first thing I knew was getting up and looking around to see where the other fellows were"—and that for some moments he could not see any one, and that it was always a mystery to him "where the engineer" was during the accident and consequent scramble. This witness further states that the engineer said, in language slightly profane, just prior to the derailment, that there was not a brake on the train, and that this utterance was met by plaintiff thus: "All right; let her go;" and that he (plaintiff) was firing all he could. The engineer also received injury from the accident.

This brings this fireman very near to the charge that he was in accord with the rapid movement of the log train.

It remains that plaintiff was not in command, and the engineer was not to receive suggestion from him, but to act upon his own judgment.

This seems to have been a passing utterance; whether made in earnest or jest does not appear. With reference to the logs in the cars as placed therein, we incline to the

view that they were not carefully laid. They should not have been placed therein so as to cover the brakes.

We pass from consideration of the train, its appliances, its burdens and movements, to a consideration of the track, rendered unsafe, it is charged by plaintiff, by the use of unsound cross-ties.

We infer from the weight of the testimony that under the pressure of the cars the rails must have yielded and spread. It would serve little purpose to again refer with some detail to the ties and consequent unsafety of the road. The weight of the testimony sustains the view that the road was not as safe as it might have been at the place of the wreck. The ties, made of poor material, were many of them rotten, and did not hold the spikes. Appliances reasonably safe must be had. It is the duty of the master to furnish his employés a reasonably safe place on which to work and keep it safe. Sroufe v. Moran Bros. Co. (Wash.) 68 Pac. 896, 58 L. R. A. 320, 92 Am. St. Rep. 847.

It is required of the master to exercise care in running a train loaded with heavy logs.

Defendants invoke the fellow-servant doctrine, and urge that the fireman and engineer are fellow servants.

The train was in charge of the engineer. The negligence was not confined to the engineer. It was more particularly that of those who had the repair of the roadbed in charge. They were not fellow servants of the plaintiff.

If the facts were to sustain the view that both the master and his servant, the engineer, were negligent, then the following rule would have direct bearing:

"Where the negligence of the master is combined with the negligence of a fellow servant in producing the injury, and the negligence of neither is alone the efficient cause, both the master and fellow servant are liable, and the injured servant may maintain his action against either, or both together." This rule is sustained by a number of decisions cited in the Eng. & Amer. Ency. of Law, vol. 12, p. 905, par. "d."

The question of damages next arises for consideration. Plaintiff was 28 years of age. He earned the wages usually paid to the average locomotive fireman, engaged as this was, in conveying logs, viz., $1.50 a day.

He unquestionably suffered and was badly shattered physically. We do not infer that he was permanently injured.

The amount of the damage is fixed at $3,000, with 5 per cent. interest thereon from 13th day of April, 1904.

It is ordered, adjudged, and decreed that the verdict of the jury and judgment of the court is affirmed to the amount of $3,000, with 5 per cent. interest from the date of the judgment of the district court.

It is further ordered, adjudged, and decreed that the demand for a larger sum is rejected, and to that extent the judgment of the district court is amended.

PROVOSTY, J., not having heard the argument, takes no part.