[No. 5933.]

## THE DENVER AND RIO GRANDE RAILROAD COMPANY V. REITER.

1. **Railway Company — Duty to Inspect Track** — A railway company owes to its servants who operate its trains the duty to make reasonable inspection and reparation of its tracks. The duty is primary and cannot be delegated. The company is liable to a trainman injured by reason of the defective condition of a switch, which a proper inspection would have disclosed.—(424)

2. **Master and Servant—Duty of Master as to Number of Servants**— It is negligence in the master to employ an insufficient number of servants to properly and safely perform the work entrusted to them.—(425)

3. —— **Minor Servant Falsifying as to His Age** — Where a minor is employed upon the faith of his false statement that he is of full age, the master owes to him only the same measure of care as to an adult employe. If injured by conduct of the master which would be negligence as to an adult, he is entitled to an action.—(427)

4. ——**Master's Rules**—The rule of a railway company requiring the trainmen to look out for defects in the track does not relieve it of the duty to know the condition of its track, so far as by reasonable diligence possible, nor impose upon the servant the assumption of the risk of injury from the defective condition of the track.—(427)

5. **Appeals — Harmless Error** — To permit a witness to improperly express an opinion where the detail of facts given by the same and other witnesses justifies the same conclusion, is harmless.—(425)

6. ——**Objection Not Presented Below**—The appellant complaining that evidence was improperly received will not be heard to assign grounds of objection not presented at the trial.—(426)

7. **Experts—Opinions**—An expert is not to give an opinion as to the cause of an accident, based upon the conditions existing when he visited the place, such conditions not being the same as those existing at the time of the accident.—(426)

*Appeal from Fremont District Court* — Hon. MORTON S. BAILEY, Judge.

Mr. JOEL F. VAILE, Messrs. WALDO & DAWSON, Mr. J. G. MCMURRAY, Mr. E. N. CLARK, and Mr. WILLIAM W. FIELD, for appellant.

(27)

Messrs. CHAMPION & BLUNT, and Messrs. RICHARDSON & HAWKINS, for appellee.

Mr. JUSTICE WHITE delivered the opinion of the court:

The appellee was plaintiff below, and sued appellant to recover damages for personal injuries sustained by him, through the alleged negligence of the latter. Plaintiff recovered a judgment from which the defendant prosecutes this appeal.

The plaintiff claimed that his injury was caused directly and proximately by the negligence and carelessness of the defendant, in causing to be used and maintained in the switch on its railroad track, at or near the point where he was injured, old, worn, unsafe, and unfit frogs which would not perform the function and purpose for which they were designed; in causing to be used and maintained in said switch certain rails, called guard or wing rails, when the same were out of proper position, in that they were out of gauge, to such an extent as to render the passage of trains over said switch dangerous and hazardous; and in using and maintaining in said switch, as a part thereof, an old and rotten switch block, and switch chairs, and in allowing the railroad tracks constituting a part of said switch to be and remain out of repair and out of gauge.

The defendant denied any negligence whatever upon its part, and alleged the assumption of the risk by the plaintiff; that he was a man of mature years and experience in the business and occupation in which he was then engaged, and familiar with the track, switch, frog and guard rails mentioned in the complaint, and with the manner in which the same were used, and that plaintiff was guilty of contributory negligence.

The appellant owned and operated a railroad,

the main line of which passed through the city of Florence in Fremont county. From Florence in a westerly direction to the town of Coal Creek, in the same county, it owned a branch line, having three rails, permitting the operation over and upon the same, of both standard and narrow gauge locomotives and cars. At a point between the city of Florence and Coal Creek, and about one-half mile from the latter town, the line of railroad was divided by means of a double-pointed railroad switch; one branch extending to a coal mine called the "Old Slope," and the other branch extending to said Coal Creek. The appellee was employed by the defendant in the summer of 1904, at which time he represented himself to be of the full age of twenty-one years, though he did not attain his majority until October 26, 1905. A rule of the company required that minors "must not be employed in engine, train or switching service, or in other service, only upon the release from the parents or guardian."

Upon entering the employment of appellant, the appellee was assigned to work as a brakeman on the Coal Creek branch above designated, passing back and forth over it at least once a day each way, and sometimes oftener, when the traffic was such as to require it. October 12, 1905, a train was made up at Florence and started to Coal Creek. It consisted of a narrow gauge car ahead, loaded heavily with 12 x 12 green pine timbers; behind this narrow gauge car were six standard gauge empty cars, and behind these an engine, pushing the cars to their destination. The appellee was front brakeman on this train and was properly riding upon the narrow gauge car. On approaching the double point switch at the east end of the left wing or guard rail, the left wheel of the forward truck of the narrow gauge car mounted the wing rail and ran along the top thereof

for several feet. The left wheel of the front truck took the wrong side of the frog, and eventually left the rails altogether, and ran along the ties, being deflected from the Coal Creek track, to the "Old Slope" track. The wheels of the rear trucks of the narrow gauge car kept the Coal Creek track, as did all the other cars and locomotive constituting the train. By reason of the derailment, appellee was jolted or thrown off the narrow gauge car and fell in such way, that the rear wheels of the car passed over his left leg and injured it so seriously that it had to be, and was, amputated above the knee. The road through the switch was on a slight curve to the left, thus throwing the higher tracks to the right. The accompanying diagram will aid in an understanding of the conditions where the injury occurred, and the facts of the case.

The lower track, marked No. 7, is the one upon which the left wheels of the trucks of the standard gauge cars and locomotive were traveling; No. 8 is the lower rail upon which the left wheels of the narrow gauge car were traveling, and No. 9 is the upper rail upon which the right wheels of all the cars were traveling; the double-point frog extends from the point marked No. 1 to the point marked No. 2; the rail marked No. 3 is the lower wing or guard rail of the double-point frog; the rail marked No. 4 is the upper guard rail of the double-point frog; No. 10 is the head block of the switch; the dotted lines show the course of the derailed trucks of the narrow gauge car as shown by wheel marks on cross ties; "A" is the point of the wing rail where the left-hand wheel of the front truck of the narrow gauge car first struck, and "X" is where the wheel finally mounted to the top of the wing rail, along which it traveled to point "B." The evidence discloses that the wing or guard rail at point "A" was very much worn as the result

of car wheels striking against it, and glancing off; that the whole corner was worn off the ball of this rail three-quarters of an inch from the center down; after the wheel mounted the wing or guard rail at "X" it traveled along the top of the rail until it reached point "B" where it dropped on the right-hand side of the point of the frog, instead of the left-hand side, and upon reaching the west end of the wind rail of the switch, jumped to the ties. The double-point frogs were "badly worn five or six inches back, a full length of a hand." The width of the frog at the point where it was flush with the surface rail was seven-eighths of an inch. The switch block and switch chairs were old, rotten and cracked. The proper width or gauge of a standard truck is four feet eight and one-half inches, and of a narrow gauge is three feet. The tracks comprising the switch were from three-fourths to seven-eighths of an inch wider than the proper gauge. Rails on curves should be from one-half to three-fourths of an inch wider than the regular gauge, except in switches. "In a switch they should be laid to gauge." A car in running sticks to the outside of a curve, and a loaded car will hug the rail closer than an empty one. Appellant's section foreman testified: "Went to place of accident next day; the gauge was three-fourths of an inch out where wheel dropped into frog, catching the wrong side of the point (at point 'B'). If the track was out of gauge three-fourths of an inch at point of frog ('B'), it would probably be more likely to make the flange of the wheel catch the wrong side of the point than if it had been in gauge. I think it is a bare possibility it would derail a train there on that gauge."

The evidence conclusively shows that appellant, as to the branch line in question, had no inspection service. and that while it was the duty of the section

foreman to inspect the tracks, as to the tracks in question he had not done so. He testified that he had three men most of the time, sometimes two, and with the condition the track was in, there was enough work for two gangs; that while he had authority to get more men, he was short because he could not get them at the wages he was authorized to pay.

The first contention of appellant is, 'that the evidence wholly fails to establish any negligence on the part of the appellant in the matters alleged in the complaint. Appellant assumes that the worn and battered condition of the point of the frog at "B" in no wise contributed to the injury, and proceeds to eliminate that feature of the evidence, and case, from consideration. This assumption is based upon the fact that the evidence clearly shows that the wheels left the track rail at point "X," some ten feet before the point "B" of the frog was reached, and that, therefore, the condition of the ·frog at point "B" had no· effect whatever in causing the accident. We cannot accept the assumption indulged by counsel. When we collate in the· mind the facts, that a car on a curve hugs the outside or upper rail; that the frog in question was on the lower side of the curve; that the point of the frog was battered down and broadened, and where it was flush with the surface of the rail was seven-eighths of an inch wide; that the gauge of the tracks was from three-fourths to seven-eighths of an inch wider than it should have been; that the front wheels of the car mounted the wing rail of frog at point "X," some ten feet east of the point of the frog; that the wheel when it reached the frog, instead of dropping on the lower side of the point thereof, as it should have done, dropped on the upper side, and derailed the car, the mind is irresistibly impelled to the conclusion that the worn or battered condition of the point of the frog at "B" ma-

terially contributed to the derailment. Had the tracks been in proper gauge, or had the point of the frog at "B" not been worn and battered, the flange of the wheel would doubtless have caught the point of the frog on the lower side, and the accident would thereby have been averted. Appellant, however, contends, that "where there is a curve," the rails must be set at a gauge one-half to one inch wider than on tangents, and that, therefore, the excess gauge at point "B," or even at point "X," was the proper gauge for curves, and in full accord with good railroad construction as shown by all the evidence. We think counsel has drawn erroneous conclusions from the evidence. We cannot read from the record where any witness testifies that excess gauge is permissible in a switch or turnout. The witnesses agree that on curves an excess gauge is allowable, and that tracks are so made, except in switches, where they should be laid to gauge. The testimony further shows that the rule of the appellant company requires that all switches be laid to gauge. M. A. Ward, wrecking foreman of appellant company, testified: "On the D. & R. G. R. R. they lay switches to gauge; they do not to my knowledge use any such excess as three-fourths of an inch." He further testified that if the track was out of gauge three-fourths of an inch, that might account for the accident taking place just as it did.

It is further argued that it was physically impossible for the excess width of the gauge to have caused or contributed to the derailment. It is said that the tread of the narrow gauge wheels is four inches, and assuming that the right-hand wheel hugged its rail so that the entire excess of width came upon the left wheel, there would still be three-fourths of an inch of the wheel upon its proper rail. This very fact, however, coupled with the worn and battered condi-

tion of the point of the frog at "B," warrants the conclusion that the excess gauge was a contributing cause of the injury. It lessened the probability of the wheel taking the point of the frog.

The appellant argues that the complaint charges the defendant with failure to provide "inspection service," and not that the inspectors who were provided were negligent in the performance of their duty, and that it affirmatively appears that the "inspection service" and "system" provided and maintained by the appellant did include occasional testing of the gauge of the track by its section foremen, and an immediate and special test when anything appeared to suggest suspicion. Counsel has evidently overlooked important allegations of the complaint.

Paragraph 5 directly charges failure to inspect; paragraphs 6 and 7 also in effect so charge; and paragraph 8, not only alleges failure to inspect, but that no inspection service was provided or maintained.

It is said that there is nothing in this record to indicate that a duty was imposed upon appellant, or any of its employees, to make an inspection differing in any respect from that which they did make; that there were no facts established upon which could be predicated a legal duty upon the appellant or its employees to apply a measuring stick or gauge at each or any particular point after the passage of any train, or every day, or at any other specified period. The latter part of this allegation is quite true, but there was evidence that at switches and upon curves it was necessary to frequently gauge the track, and that the particular curve or switch in question had not been gauged at all. We are clearly of the opinion that the evidence conclusively shows that a proper inspection would have revealed the defects of which complaint is made. The duty of reasonable inspection on the part of the defendant of its track was

primary and inalienable, and it was bound to discharge it, or cause it to be discharged in a suitable and proper manner.—*Maydole v. The D. & R. G. Co.*, 15 Col. App. 449, 452; *U. P. Ry. Co. v. Snyder*, 152 U. S. 684; vol. 4 Thomp. Neg., § 3789.

Complaint is made that the court, over the objection of defendant, permitted witness O'Brien, who at the time of the accident was section foreman of defendant, to testify that there was difficulty in obtaining a full force of men, and that he did not have as many men in his department as he desired. He also testified that he had not inspected this particular portion of the track, because he was busy elsewhere. Under the circumstances we do not think the admission of this testimony was error. It is clearly negligent for a master to employ an insufficient number of servants to properly and safely do the work entrusted to them.—Busw. Pers. Inj., § 200 (p. 398, ed. 1899); Patt. R. Acc., § 309.

Over the objection of the appellant, a witness was permitted to testify that "conditions generally about that switch were old and much worn," and the action of the court therein is complained of and said to constitute reversible error. While the words used are unquestionably a conclusion of the witness, yet the evidence of that and other witnesses did disclose the facts, showing the old and much worn condition about the switch. If it was error, it was error without prejudice.

It is said that plaintiff's track expert was, over objections of defendant, permitted to give his opinion directly upon the question whether the frog, with the conditions existing, was safe and efficient, and that it was a subject upon which expert testimony was not admissible. *Coe v. Van Why*, 33 Colo. 315, is cited in support of the contention. By an inspection of the record we find it unnecessary to determine the

question. The objection interposed to this evidence was its immateriality and irrelevancy, ''because the testimony has shown that this was not the point at which this car left the track, and was not the approximate cause of the derailment or injury.'' The testimony was not objected to upon the grounds here urged.—*United Oil Co. v. Roseberry*, 30 Colo. 177.

Appellant argues that when it undertook to bring before the jury expert testimony by similar questions to witness West, the court refused to permit it; and it is said that in view of the previous admission of testimony of the same kind, it was inequitable and grievous error to deny the defendant the right and opportunity to introduce expert testimony upon the subject. The record does not support the contention of appellant in that respect. A witness for defendant was permitted to give, without objection, his opinion as an expert as to the cause of the wheels leaving the track, and was then asked: ''With that track in the condition in which you found it in every other particular, would the fact that it was three-fourths of an inch wider than the actual gauge at the point 'B,' the point of the double-point frog, be such a defect as would probably cause a derailment or not?'' An objection that: ''Mr. West was not there at the time; the track when he found it was not in the condition that it was at the time of the derailment,'' was interposed and sustained. This objection was properly sustained. The question did not cover the conditions as they existed at the time of the injury.

Appellant further contends, that appellee received the injury of which he complains in consequence of a deliberate and willful fraud, perpetrated by him upon the appellant; that if he had not deceived the appellant as to his age, he would not have been employed in its train service, and would not, at the date of the injury, have been in a position

where he could have suffered from the derailment of the car, and that as the law does not permit one to profit by his own wrong, the plaintiff should not recover herein. The position of counsel is not tenable. The law is well settled that though a minor, applicant for employment, untruthfully represents himself to be of age in order to secure employment, and such representation is believed by his employer, he is not thereby barred from a recovery for injuries which he may suffer by the negligence of his employer; that the effect of such representation is to place upon the employer the same duty as such employer would owe to an adult. In other words, by the false representation the boy becomes entitled only to a man's protection, and the employer is relieved of the higher duty which he would owe to a minor.— *Matlock v. The W. G. & St. Louis Ry. Co.,* 95 S. W. 849.

The court so instructed the jury and appellant cannot complain.

Appellant contends that plaintiff had an opportunity to know the imperfect condition of the switch and junction tracks where he was injured, and such being the fact, even if the condition was chargeable to the negligence of defendant, plaintiff by continuing in the service, under such circumstances, assumed the risk incident to the condition then prevailing so far as he knew, or ought to have known thereof.

The court properly instructed the jury upon the assumption of risks. The subject was particularly covered by instructions Nos. 7, 8, 9 and 10. The fact that plaintiff, in common with other employees of defendant, was "to look for defects as far as he could do so in the discharge of his duty as a brakeman, and if any observed to report them to the company," was only a circumstance to be considered by the jury in connection with the other evidence. The company

could not relieve itself of the duty to know the condition of its track, as far as such condition could be known by the exercise of reasonable care and diligence, and place upon an employee the assumption of such risk by such uncertain inspection as suggested.—*Maydole v. D. & R. G. R. R. Co., supra.*

Some of the other instructions given are criticised. The refusal of the court to give some requested by defendant is complained of, and other objections urged, but we consider it unnecessary to comment upon these in detail. We deem it sufficient to state that we have examined the entire record, are impressed with the fullness, fairness and correctness of the charge given to the jury, and are clearly of the opinion that no error was committed in the trial of this cause, sufficient to warrant a reversal, and the judgment is, therefore, affirmed.          *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE CAMPBELL concur.