(73 South. 606)

No. 20791.

BROUSSARD et al. v. LOUISIANA WEST-
ERN R. CO.

(Dec. 11, 1916.   Rehearing Denied Jan. 15,
1917.)

*(Syllabus by Editorial Staff.)*

1. RAILROADS ⬳316(2)—INJURY AT CROSSING
—NEGLIGENCE—SPEED OF TRAIN.

A speed of at least 30 miles an hour at a
crossing at the boundary line of the corporate
limits which the train was entering, which
though outside of the built-up part of the city
was as much used as any crossing in the city,
in view of an ordinance limiting the speed of
trains at a point several streets further inside
the city to 15 miles an hour, and defendant's
rule that within the limits of the city the speed
of trains should not exceed 6 miles an hour, was
excessive, and of itself constituted negligence
rendering defendant liable for the death of one
in an automobile struck and killed by the train.

[Ed. Note.—For other cases, see Railroads,
Cent. Dig. § 1007;  Dec. Dig. ⬳316(2).]

2. RAILROADS ⬳348(5, 6)—INJURY AT CROSS-
ING — SPEED — CONTRIBUTORY NEGLIGENCE
—EVIDENCE.

In an action for the death of one who, while
in an automobile, was struck and killed by train
at a crossing, evidence *held* not to show that
the driving of the automobile upon the track was
the proximate cause of the accident, or that the
accident would have been unavoidable had the
speed of the train been less.

[Ed. Note.—For other cases, see Railroads,
Cent. Dig. §§ 1143, 1144, 1149;  Dec. Dig. ⬳
348(5, 6).]

3. RAILROADS ⬳327(1)—INJURY AT CROSSING
—CONTRIBUTORY NEGLIGENCE.

Failure to look and listen before attempting
to cross a railroad crossing in an automobile
was grossly negligent.

[Ed. Note.—For other cases, see Railroads,
Cent. Dig. §§ 1043, 1045;  Dec. Dig. ⬳327(1).]

4. NEGLIGENCE ⬳93(1) — IMPUTED NEGLI-
GENCE—PASSENGER IN AUTOMOBILE.

The negligence, if any, of an experienced
chauffeur on an automobile operated as a legal
transfer in attempting to cross a railroad cross-
ing without looking and listening, was not im-
putable to a passenger for hire.

[Ed. Note.—For other cases, see Negligence,
Cent. Dig. §§ 147, 148;  Dec. Dig. ⬳93(1).]

5. RAILROADS ⬳348(11)—INJURY AT CROSS-
ING — CONTRIBUTORY NEGLIGENCE — EVI-
DENCE.

In an action for the death of a passenger in
an automobile killed at defendant's crossing,
evidence *held* not to show that those in the au-
tomobile did not hear the train and ventured
recklessly on the track because they were on a
joy ride and had been drinking.

[Ed. Note.—For other cases, see Railroads.
Cent. Dig. § 1150;  Dec. Dig. ⬳348(11).]

6. DEATH ⬳99(4)—EXCESSIVE DAMAGES.

In an action by a widow and her five chil-
dren for damages in her own behalf, and that of
the children, for decedent's suffering and death,
where it appeared that deceased was 36 years
of age, earning $65 a month, and that he sur-
vived the accident some 30 minutes during
which he suffered greatly, a verdict allowing the
widow $8,000 individually, and $2,400 to each
of the five minors, would be reduced to $5,000
in favor of the widow and $2,000 for each of
the minors.

[Ed. Note.—For other cases, see Death, Cent.
Dig. §§ 125, 126, 129;  Dec. Dig. ⬳99(4).]

Appeal from Eighteenth Judicial District
Court, Parish of Acadia;  Wm. Campbell,
Judge.

Action by Mrs. Zulmae Broussard, widow,
and others, against the Louisiana Western
Railroad Company.   Judgment for plaintiffs,
and defendant appeals.   Judgment reduced
to $5,000 in favor of the widow individually,
and to $2,000 for each of the five minor chil-
dren, and, as modified, affirmed.

Denegre, Leovy & Chaffe, Harry W.
Gueno, Lawrence H. Pugh, and Philip S.
Pugh, all of Crowley, for appellant.   Smith
& Carmouche, of Crowley, for appellees.

PROVOSTY, J.   John E. Wright, husband
of plaintiff, and four other men, were in the
act of crossing the track of the defendant
company's railroad in an automobile on East-
ern avenue in the city of Crowley, on a
bright Sunday afternoon in April, when the
automobile was struck by a fast passenger
train of the defendant company, and he and
one of his companions on the back seat of
the automobile were killed.   Plaintiff sues in
damages in her own behalf and that of their
minor children for his sufferings and death.

The other three men survived and testified
in the case.

[1] It is charged that the proper signals

by whistle and bell were not given, and that the fireman was incompetent; but the testimony is conflicting on those points, and need not be gone into, since we find that the speed of the train was excessive, and of itself constitutes negligence which renders the defendant company liable.

The evidence shows a speed of at least 30 miles an hour. The engineer admits 25 to 30, which, we take it, is more likely to mean 30 than less. And the evidence shows that this crossing, although at the boundary line of the corporate limits which the train was entering, and although the closely built-up part of the city does not reach quite that far, is as much used as any other crossing of this city of 6,000 inhabitants.

The city ordinance regulating the speed of trains located the speed limit several streets further inside of the city, and it is argued that this practically amounted to a permission to the railroad to run at ordinary speed at this crossing; but the rules of the defendant company provided that within the limits of Crowley the speed should, not exceed six miles an hour; and prudence would dictate that a crossing so near the built-up part of a city as to be used as any other crossing in the city should be approached at a less rate than thirty miles.

[2] The automobile was going in the same direction as the train, and along a road which for some distance before reaching the crossing paralleled the railroad, about 75 feet away from it on the fireman's side of the train. The fireman saw the automobile, and if, when he first saw it, and, indeed, for some time afterwards, he had suspected that it would attempt to cross ahead of the train, he could have stopped in time; but, when he did realize that it was going to cross, it was too late. Defendant contends that it would equally have been too late even if the speed had been the 15 miles fixed in the ordinance, and that therefore the proximate, or, in oth-

er words, the sole legal, cause of the accident was the act of the automobile in coming upon the track; and for showing that the accident would equally have been unavoidable if the speed of the train had been less, defendant adduces computations of seconds and number of feet. But that argument takes into consideration only what was possible to be done by the fireman and engineer; it loses sight of what was possible to be done by the occupants of the automobile. Non constat but that even a shade less of speed would have afforded Wright an opportunity of safety such as that which three of his companions availed themselves of, whose knowledge of the imminent danger preceded his by perhaps but the twinkling of an eye. The slower either the train or the car had been going, the greater would have been the margin of safety.

[3] Of course, the automobile was grossly negligent in not looking and listening before attempting to cross, and, of course, Wright must be disconnected with that negligence before plaintiff can recover.

[4] He is so disconnected if he was a passenger for hire, and had reason to assume that the chauffeur was competent. Roby v. Kansas City R. R., 130 La. 880, 58 South. 696, 41 L. R. A. (N. S.) 355; Wachsmith v. Baltimore & Ohio R. Co., 233 Pa. 465, 82 Atl. 755, Ann. Cas. 1913B, 684; 29 Cyc. 547.

There is no suggestion that the chauffeur was inexperienced; but it is contended that the five men were a party of friends engaged in a common enterprise, each having equal control over the car, and equally responsible for its management. The facts in that connection are that Wright, Bonin, Andrus, and St. Germain, desiring to go from Lake Arthur, where they lived, to Rayne, distant some 40 miles, where the Lake Arthur baseball team was to play the Rayne team, bargained with Valdetero, the transfer man, who operated a regular automobile transfer be-

tween Lake Arthur and Jennings, to take them to Rayne, agreeing to pay him $2.50 each, and that they were returning home in the afternoon when this accident occurred. Valdetero, Bonin, and St. Germain testify to this hiring, and the fact that this carrying of passengers was Valdetero's business corroborates them; and, doubtless, Wright and Andrus would have testified similarly had they survived. The only suggestion made to the contrary is the testimony of one witness that Bonin told him that he had paid nothing for the car. No suggestion is made why Valdetero should have carried these four gentlemen, who were well able to pay, on this jaunt of 80 miles gratis. Oral admissions are the weakest kind of evidence.

The curtains of the automobile had been removed, and there was nothing to prevent Wright from seeing the railroad track had he been observant, especially as the danger sign usual at railroad crossings stared him in the face. The contention is that he should have observed the crossing and warned the chauffeur; and in support of this the case of Dixon v. V. S. & P. R. R., 139 La. 329, 71 South. 527, is cited. The occupants of the automobile in that case were not passengers for hire. The obiter dictum in that case, practically to the effect that a passenger on the front seat of an automobile is under the same legal obligation as the chauffeur to be observant, has no application to this case for the reason that Wright was not on the front seat; and as to its being good law in any case, quære.

[5] Next, it is said that the party were on a joy ride and were drinking, and that that is the reason why they did not hear the train and ventured so recklessly upon the track. The speed of the car was moderate, not indicating a joy ride. The three survivors testify that, while they had taken several drinks of whisky that day, they had taken but one since dinner, and were not drinking in the sense of becoming intoxicated. Apart from this, the sole evidence for showing intoxication is that several flasks of whisky were found in the automobile, and the broken parts of one ordinary bottle that had contained whisky were found on the ground at the scene of the accident, and the testimony of one witness who says that Valdetero told him they had been drinking but were not drunk. Even assuming that this broken bottle came from the automobile, and had been emptied that day by the five occupants of the automobile, this would not show drunkenness on their part, especially in the absence of testimony from any of the numerous bystanders who came to the assistance of the wounded men that their breath indicated drinking, or that the survivors appeared to be at all under the influence of liquor. Their not having heard the train is explained by the fact that it had shut off steam, and was moving along very smoothly and silently; so peculiarly so as to attract the attention of one of the witnesses, who remarked upon the fact before the automobile had come upon the scene; and the wind was considerable, blowing towards the train. That the train was not seen is accounted for by the fact that it was coming from behind; and also, possibly, in part, by the fact that the road was very dusty and the cloud of dust raised by the automobile was being blown in that direction. So dense was this cloud of dust that it hid the automobile from the engineer, who saw this cloud, but not the automobile itself, as he approached and passed it from behind. The turn from the road to the crossing was sharp.

The car made this turn and approached the crossing slowly. The fireman had the car in full sight, but, very naturally, supposed it would stop, and not attempt the suicidal feat of crossing just ahead of the on-rushing train.

[6] Wright was 36 years old, and was city

marshal and street commissioner of the town of Lake Arthur, earning $65 a month. By his death the plaintiff has been left without means of support, except what she can earn by taking in washing and sewing. She claims in her own behalf $6,000 for loss of support and maintenance, and $6,000 for the loss of the society, love, affection, and care of her husband. In behalf of each of the minors, she claims $2,500 for the loss of maintenance, and $2,500 for loss of the care, love, protection, and society of their father, and for the pain which he suffered as the result of the accident. They are nine, five, and two years old, respectively.

Wright survived the accident some 30 minutes, in a semiconscious state, and during that time suffered greatly. What pecuniary valuation could be placed on these sufferings it would be hard to say.

The jury allowed $8,000 to plaintiff individually and $2,400 to each of the five children, making $20,000 in all. In support of this verdict, and even for its increase, the cases of Bourdier v. Louisiana Western R. R., 131 La. 690, 68 South. 78, and Jones v. Kansas City Southern R. Co., 137 La. 178, 68 South. 401, where as large if not a larger amount was allowed, are cited by plaintiff, and numerous cases, where a smaller amount was allowed, are cited by defendant—all under circumstances more or less similar. There can be no fixed standard in cases of this kind. We think that an allowance of $5,000 to the plaintiff individually, and $2,000 to each of the children, will do justice in the case.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be reduced to $5,000 in favor of plaintiff individually, and $2,000 for each of the five minor children, or $10,000 for the minors, and that as thus reduced it be affirmed. The plaintiffs to pay the costs of appeal.

MONROE, C. J., takes no part.