Hillsborough, }
Dec. 1, 1936. }

ANSELM HARMON, *Adm'r v.* ZOAR J. RICHARDSON.

*John J. Sheehan* and *Paul J. Doyle* (*Mr. Doyle* orally), for the plaintiff.

*Thorp & Branch* (*Mr. Branch* orally), for the defendant.

314

WOODBURY, J. The defendant does not contend that he owed the decedent no duty to exercise due care for her safety nor does he contend that there is no evidence in the record from which his failure in that respect could be found. Neither does he contend that the decedent's contributory negligence is conclusively established. His sole contention, as expressed in his brief, is that even "if the defendant was negligent, there was no evidence from which the jury could find that the negligence was causal."

The defendant summarizes his argument in support of this position as follows: "The primary cause of the accident was either Mrs. Harmon's defective eyesight or a sudden seizure of some kind. Whether she fell over the rail because she could neither see it nor find it with her hands or because of a sudden seizure, we do not know, and whether a rail five inches, or six inches, or seven inches higher would have saved her or permitted her to save herself rests entirely in the realm of conjecture."

This argument is based upon a misconception of the extent of the burden of proof placed by the law upon a plaintiff. His burden is no greater "than that of making it a little more probable than otherwise that the ... [fall] was caused by the defendant's negligence. ... [He is] not bound to disprove the existence of all other possible causes." *Bresnahan* v. *Company, ante* 273, citing *Upton* v. *Company,* 81 N. H. 489, 492, and cases cited.

In the case at bar there is no evidence that the decedent, just prior to her fall, suffered a heart attack or any other "sudden seizure." The only evidence is that when she arrived at the end of the balcony she reached out and then toppled to the ground below. This lack of evidence of any other equally probable cause of the injury for which the defendant is not responsible (*Boucher* v. *Larochelle,* 74 N. H. 433), takes the case out of the category of *Ingerson* v. *Railway,* 79 N. H. 154, and *Russell* v. *Railroad,* 83 N. H. 246, relied upon by the defendant, and places it in the category of *Bresnahan* v. *Company, supra,* and *Upton* v. *Company, supra.*

Among the many authorities collected in the case last cited it is necessary to refer to but one which is closely in point. In *Angelico* v. *Company,* 80 N. H. 290, the decedent fell to his death from a defective staging or runway. No one testified as to the cause of his fall. In conclusion the court in that case said: "In short, the conclusion the intestate lost his balance is one of which the evidence is fairly capable, and as there is no other equally probable conclusion inferable from the evidence, it cannot be said the court erred when

it denied the defendant's motion for a directed verdict." This language is fully as applicable to the facts in the case before us as to the facts in the case in which it was used, and we see no reason to question its accuracy.

Under the facts of this case the decedent's nearsightedness cannot be regarded as the sole legal cause of her fall. It was only one of the pertinent surrounding circumstances to be considered by the jury in passing upon the question of whether or not she used due care for her own safety. *Sleeper* v. *Sandown*, 52 N. H. 244; *Daniels* v. *Lebanon*, 58 N. H. 284.

The defendant's further argument, based upon *Cozzi* v. *Hooksett*, 84 N. H. 530, is equally without merit. In that case the plaintiff's automobile skidded against a non-standard highway railing which broke and permitted it to fall over an embankment. It was held that the plaintiff could not recover in the absence of evidence that a standard rail would have proved adequate to prevent the car from leaving the road.

In the case before us the evidence is clear that she was proceeding slowly and using the westerly rail only to guide herself. The accident happened not because the southern railing was too weak but because it was not high enough to serve as a guide. While expert testimony is necessary, under certain circumstances, to inform the jury as to the amount of force which a given railing can withstand, it does not follow that similar testimony is required to inform them as to the suitability of a rail for use as a guide or warning even when it is used for that purpose in a physical rather than in a visual sense. (See *Vidal* v. *Errol*, 86 N. H. 1, 13.)

*Judgment on the verdict.*

BRANCH, J., did not sit: PAGE, J., was absent: the others concurred.