FRUGÉ, Judge.
This suit involves a fatal train-automobile accident which occurred in the Town of Vinton, Calcasieu Parish, Louisiana. The accident occurred at the intersection of Eddie Street and The Texas and New Orleans Railroad Company tracks. Eddie Street runs in a generally North and South direction and the defendant’s main line railroad tracks run generally East and West. The railroad crossing in question was protected by a Louisiana Law railroad stop sign, a city stop sign, and an automatic railroad crossing warning signal, which automatic railroad crossing signal contains a swinging red light and bell which was operating at the time of the accident.
On the day in question one Joe Foreman, who was proceeding in a southerly direction on Eddie Street, picked up Tanner Perkins approximately 300 feet from the crossing. Tanner Perkins was sitting on the front seat on the right hand side in the 1958-four door Dodge owned and driven by the said Joe Foreman. The defendant’s freight train was traveling East and the accident occurred at the intersection and both Foreman and Perkins lost their lives as a result thereof. The widow of Perkins instituted this suit and after trial in the lower court was awarded damages in the sum of $13,750.00. From the said judgment the defendant railroad company perfected this appeal to this court.
The facts found by the trial judge and which seem to be clear is that on the morning of September 28, 1959, after daylight, at approximately 6:02 o’clock A. M., Tanner Perkins, husband of the plaintiff, was riding as a guest passenger in the 1958 four-door Dodge owned and driven by one Joe Foreman. That said Dodge was proceeding South on Eddie Street in the Town of Vinton and defendant’s freight train was traveling East as it approached this street. The electric signal devices which had been installed at this crossing by the defendant to warn the public of the approach of a train were properly working at *675 the time of the accident. There was also located at the crossing the usual Louisiana Law stop sign and intersection stop sign. As the train approached the crossing its headlight was burning and the bell was ringing and the whistle was blowing. The crossing was composed of three tracks, a North track or house track, its main line, and a South track. The North track serviced a large warehouse located on the North side thereof which warehouse extended from Eddie Street westward for approximately 500 feet. It was clearly established that the train was traveling 37 miles per hour at the time of the accident and the defendant railroad company had a rule of speed limitation in the Town of Vinton which limitation rule was 25 miles per hour. The engineer testified that he was aware of this rule but proceeded in violation thereof. The train was five hours behind its scheduled time at the time of the fatal accident.
The warehouse, which was located on the North side of the North track of the defendant railroad company, obstructs the view to the West of an automobile driver going South on Eddie Street. It also obstructed the view of trainmen proceeding East to the extent that a trainman cannot see an automobile approaching the crossing from the North until the vehicle emerges from behind the building. The engineer and brakeman in the particular case were aware of the existence of the warehouse having traveled the route many times. The train in question was made up of 113 railroad cars pulled by four diesel engines. The engineer, brakeman, and fireman were located on the forward engine and the engineer was seated on the right or South side. The brakeman and fireman were seated on the left or North side of the engine.
The speed of the automobile in which Perkins was riding was estimated at different speeds by the various witnesses to the accident. S. J. Hebert, the fireman of the train, estimated the speed from 20 to 25 miles per hour. J. H. Pluett, the brakeman, estimated the speed from three to four miles per hour. One C. B. Bruce, a filling station owner near the crossing who saw the car approach the crossing, estimated its speed at 15 to 20 miles per hour. Walter Greenway, who saw the car approach the crossing, estimated its speed at 10 miles per hour.
J. H. Pluett, the brakeman, testified that when he first saw the car emerge from behind the warehouse, the train was approximately 30 to 40 feet from the crossing and as the car came into his view its front wheels were on the North track. S. J. Hebert, the fireman, testified that the Foreman vehicle was on the North track when he first saw it emerge from behind the warehouse and the train at that time was approximately 60 feet from the crossing.
It was impossible for the engineer to see the automobile before the collision as it came from his left and due to the design of the diesel engine, his view to the left of the track is cut off by the extended portion of the engine.
The testimony of the occupants of the train engine were to the effect that when the fireman and brakeman saw the vehicle, they immediately warned the engineer and he immediately applied the emergency brakes. The train traveled a distance of approximately 1250 feet before coming to a stop. The vehicle and its occupants were carried by the engine this distance.
This Court is of the opinion, as the trial judge was, that the engineer who controlled the speed of the train was negligent in operating the train at 37 miles per hour, a speed in excess of the 25 mile per hour speed limit for this crossing as provided by the defendant company’s rules and regulations in view of the unusual dangerous characteristics of the crossing. The train in question was approximately one mile long, made up of 113 cars and four diesels. It entered the Town of Vinton at 37 miles' per hour and was making that speed at the time of the fatal accident. By the rules of the railroad company its speed in Vinton should not have exceeded 25 *676 miles per hour and the crossing where the fatal accident occurred was unusually hazardous. The warehouse which was situated next to the crossing was approximately 500 feet long and the trainmen could not see an automobile emerge from behind the warehouse until it was 50 feet from the crossing. Where a crossing is unusually dangerous, a higher degree of care must be exercised by the employees of the railroad company and this is especially true where the dangerous conditions result from obstructions to view which prevent a traveler from seeing an approaching train. The railroad company has the duty of exercising caution commensurate with the situation. American Jurisprudence, Vol. 44, Section 507, page 747.
In the case of Lampkin v. McCormick, 105 La. 418, 29 So. 952 (1954), the court, in reversing a jury verdict in favor of the defendant and awarding recovery to the plaintiff, stated the principle of law as follows :
“We have declared that, the greater the danger to the public, the greater should be the vigilance exercised and precautions taken to avoid it. If railroad corporations passing through the streets of a city fail to exercise any vigilance and to take any precaution by reason of the pecuniary expense which this would entail, they must be made to know that they assume the risks of resulting accidents, and must take the legal consequences of their balancing the chances.”
The defendant argues that the mere fact that the speed of the train at the time of the accident was 12 miles an hour in excess of the speed rate fixed by the operation of trains in the Town of Vinton does not constitute negligence in itself. This court recognizes that the mere overspeeding might not constitute negligence in itself (Robinson v. Great American Indemnity Co., La. App., 120 So.2d 855, Vernaci v. Columbia Casualty Co., La.App., 71 So.2d 417, Warner v. Insurance Company of State of Pennsylvania, La.App., 129 So.2d 320) but it is of the opinion that in view of the blind crossing, this overspeeding by the employees of the railroad company was negligence which was a proximate cause of the accident.
The Court, in the case of Levy v. New Orleans and Northeastern R. Co., La.App., 20 So.2d 559, in considering the operation of a train at a speed in excess of that fixed by the rules and regulations of the railroad company, stated at page 564 of said opinion :
“Our conclusion as a whole is that the railroad employees were negligent in that they were operating the train at a speed which exceeded the maximum limit fixed by the rules of the company, and we need cite no authorities to show that it is negligence for the employees of a railroad company to violate company rules when such rules have been adopted in the interests of safety. Had the speed of the train not exceeded the limit fixed by the rules, who can say that the accident might not have been averted? Surely the train at six miles an hour could have been stopped within a much shorter distance than was required, and who can say that, even if Mrs. Levy was also at fault in driving her car upon the track without noticing the oncoming locomotive, the accident might not have been averted had the speed been within the limit fixed by the rules ? Can the railroad be heard to say that the accident would nevertheless have occurred in spite of the speed of the locomotive ?”
In the case of McFarland v. Illinois Central Railroad Company, La.App., 122 So. 2d 845, (writs were denied by the Supreme Court on question of liability, 241 La. 15, 127 So.2d 183) the court found that a freight train speed of 30 miles per hour in Denham Springs was excessive and a proximate cause of the accident in view of the nature of the crossing at Denham Springs. In the McFarland case there were many *677 railway cars parked on the track siding as to obstruct the view of the approaching motorists. At page 859 of said decision the court stated:
“We are also considerably impressed with the testimony of the engineer Edwards who stated that because of the conditions existing at the crossing he could not and did not see the approaching truck until the vehicle was only about 75 feet from the crossing. If he could not see the truck from his position of added height in the cab of the engine by the same token decedent could not have been expected to see the train.
“Special note is also made of the testimony of various members of the train crew who readily admitted familiarity with the crossing in question and who likewise conceded the speed of the train was not reduced upon entering the city limits. Assuming the speed of the train to be 30 miles per hour as contended by the crew thereof, we find such speed excessive under the facts and circumstances shown herein.”
In considering the care required by a defendant railroad company at an obstructed or blind crossing, this Court, in the case of Simon v. Texas & New Orleans Railroad Company, La.App., 124 So.2d 646 stated at page 651 thereof the following:
“Defendant contends that if in fact the view of Simon was obstructed then the greater caution the law enforces upon Simon * * *. While it is true that if the right of way is obstructed the driver of the vehicle must exercise a higher degree of caution, the Courts have pointed out that the railroads are held to a degree of caution commensurate with the added hazard or danger which results from the existence of these obstructions. 44 American Jurisprudence, verbo, ‘Railroads’, Section 507, Wyatt v. Yazoo & M. V. R. Co., 13 La.App. 632, 127 So. 479; Rachal v. Texas & Pacific Railroad Co., La.App., 61 So.2d 525. Also see McFarland v. Illinois Central Railroad Co., La.App.1960, 122 So.2d 845. * * * »
Having concluded that the railroad company was negligent in the operation of its train which negligence was a proximate cause of the accident we shall now consider whether or not Joe Foreman, the operator of the vehicle in which plaintiff’s husband was a guest passenger was negligent. The signals at the railroad crossing were in proper working order and the evidence clearly indicates that the signal device known as a wig-wag was operating at the time of the accident. Mr. Foreman disregarded this signal device and, of course, there is no need to cite any authority to find that Mr. Foreman was definitely negligent in the operation of his vehicle in entering the crossing in spite of this warning.
 The negligence of the driver does not impute it to the guest passenger. It is the duty of a passenger or guest of a vehicle in which he is riding to use ordinary and reasonable care for his own safety. The care and precaution required of him is not as great as is that required of his host driver and it is necessary that the defendant railroad company prove with legal certainty the contributory negligence of the passenger.
The speed of the automobile in this case was not definitely established but it is safe to state that the automobile was going at a slow speed which speed was slow enough that the driver of the automobile could have stopped before getting upon the track if he had been observing the approaching train.
The plaintiff’s husband had a right to rely upon his host driver to take the necessary steps to stop the automobile and to assume that he would stop before entering upon the main line of the railroad company. It is necessary that a guest passenger exercise ordinary care, including a reasonable use of his faculties of sight, *678 hearing and intelligence, to observe and appreciate dangers or threatened dangers of injury and life. Lockhart v. Missouri-Pacific Railway Company, La.App., 153 So. 577. However, it is necessary that the defendant railroad company prove by a preponderance of the evidence that the guest passenger is contributorily negligent. There is no way of knowing whether or not Perkins warned Foreman of the approaching train. Whether he did or not Perkins was faced with an emergency when the automobile emerged from behind the obstruction or warehouse and the time element between the time the car emerged from behind the warehouse and the time the accident happened was a matter of perhaps a second or two and Perkins could not have at that time been able to take the protective or preventative steps which may have avoided injury to him or the accident. As found by the trial court a person cannot be penalized when faced with an emergency if he makes a decision which he would not make under ordinary circumstances. The trial court found that the defendant failed to sustain the burden of proof for the finding that plaintiff’s husband had been contributorily negligent and we can find no manifest error in this factual conclusion.
Plaintiff and her deceased husband had been married for 40 years. They had built and paid for a home which they occupied at the time of his death. He was 62 years of age at the time of his death and was in a good state of general health. His main line of trade was shining shoes for which he earned a profit of per shine and had several other part time jobs. There is no method for assessing damages for loss of love, affection and companionship and the Supreme Court, in the case of McFarland v. Illinois Central Railroad Company, 241 La. 15, 127 So.2d 183, has decided that there is no formula in assessing damages for loss of earnings. While recognizing the various formulas for assessing loss of earnings the Supreme Court actually concluded that there is no such formula in assessing damages. The trial judge awarded plaintiff the sum of $13,750.00 for the death of her husband. We are of the opinion that said award is not excessive and therefore it should not be disturbed.
The judgment appealed from is affirmed at defendant’s cost.
Affirmed.
HOOD, J., dissents and assigns written reasons.