147 So.2d 646

Maxine PERKINS

v.

TEXAS AND NEW ORLEANS RAILROAD COMPANY.

No. 46086.

Dec. 10, 1962.

Porter & Scofield, Lake Charles, for applicant.

Camp, Palmer, Carwile, Babin & Barsh, Lake Charles, for plaintiff-appellee.

SANDERS, Justice.

This is a tort action. Plaintiff, the 67-year-old widow of Tanner Perkins, seeks damages for the death of her husband in the collision of an automobile, in which he was riding, with a train of the defendant railroad. The district court awarded damages. The Court of Appeal affirmed.[1] We granted certiorari to review the judgment of the Court of Appeal.

The tragic accident which gave rise to this litigation occurred at the intersection of Eddy Street and The Texas and New Orleans Railroad Company track in the town of Vinton, Louisiana, at approximately 6:02 a. m., after daylight, on September 28, 1959. At this crossing Eddy Street runs north and south, and the railroad track, east and west. Involved was a 113-car freight train pulled by four diesel engines traveling east and a Dodge automobile driven by Joe Foreman in a south-erly direction on Eddy Street. Tanner Perkins, a guest passenger, was riding in the front seat of the automobile with the driver.

Located in the northwest quadrant of the intersection of the railroad track and Eddy Street was a warehouse five hundred feet long. A "house track" paralleled the main track on the north to serve the warehouse. This warehouse obstructed the view to the west of an automobile driver approaching the railroad crossing from the north on Eddy Street. It likewise obstructed the view to the north of trainmen approaching the crossing from the west. Having previously served on this route, the engineer and brakeman were aware of this obstruction.

To warn the public of the approach of trains, the defendant railroad had installed at the crossing an automatic signal device consisting of a swinging red light and a bell. At the time of the accident, this signal was operating. A standard Louisiana railroad stop sign and an intersection stop sign were also located at the crossing.

Proceeding east, the train approached the intersection with its headlight burning, its bell ringing, and its whistle blowing.

The engineer, brakeman, and fireman were stationed in the forward engine of the train. The engineer was seated on

1. 137 So.2d 673. One judge dissented from the decision. Two judges dissented from the denial of a rehearing.

the right or south side, where he was unable to observe an automobile approaching from the left of the engine. The brakeman and fireman, who were seated on the left or north side of the engine, were looking forward as the train approached the intersection. These two crewmen saw the automobile emerge from behind the warehouse. At that time the front wheels of the automobile were on or across the north rail of the house track. The fireman estimated that the train was approximately 60 feet from the crossing when the automobile emerged from behind the warehouse. The brakeman, however, estimated that the train was 30 to 40 feet from the crossing at the time the automobile came into view. Both crewmen immediately shouted a warning to the engineer, who applied the emergency brakes. The train struck the right side of the automobile and carried it approximately 1250 feet. The two occupants were inside the automobile when it came to rest. Both were killed.

The speed of the automobile in which Tanner Perkins was riding was variously estimated from 3–4 miles per hour to 20–25 miles per hour.

The plaintiff and defendant railroad concede in their pleadings that Joe Foreman, the driver of the automobile, was negligent in driving upon the track in front of the train and that his negligence was a proximate cause of the death of Tanner Perkins.[2]

It is conceded that the railroad's safety regulations imposed a speed limit of 25 miles per hour on trains in the town of Vinton. The plaintiff has conceded in this Court that this self-imposed speed limit was a safe speed at the crossing. The train was in fact traveling at a speed of 37 miles per hour.

Applicable here is the rule that the violation by trainmen of the railroad's own speed regulations adopted in the interest of safety is evidence of negligence.[3] The rule has special force in the instant case because of the unusually hazardous nature of the crossing. We find, as did the Court of Appeal, that the trainmen were negligent in operating the train 12 miles per hour in excess of the speed limit.

As one of several defenses, the defendant railroad strenuously contends that the excessive speed of the train was not a proximate cause of the collision for the reason that the accident would not have been averted even had the train been traveling at the prescribed speed of 25 miles per

2. In the original petition, plaintiff made the General Accident Fire and Life Assurance Corporation, Ltd., the public liability insurer of Joe Foreman, a defendant. However, she dismissed the suit with prejudice against the insurer prior to trial.

3. Broussard v. Louisiana Western R. Co., 140 La. 517, 73 So. 606; Levy v. New Orleans & Northeastern R. Co., La.App., 20 So.2d 559; 15 Louisiana Law Review 171, 174.

hour. Contrariwise, the plaintiff contends that the speed of the train constituted a "proximate, direct and contributing cause" of the accident.

Thus presented, the prime issue in this case is whether the excessive speed of the train was a cause in fact[4] of the fatal collision.

■ It is fundamental that negligence is not actionable unless it is a cause in fact of the harm for which recovery is sought.[5] It need not, of course, be the sole cause. Negligence is a cause in fact of the harm to another if it was a substantial factor in bringing about that harm. Under the circumstances of the instant case, the excessive speed was undoubtedly a substantial factor in bringing about the collision if the collision would not have occurred without it. On the other hand, if the collision would have occurred irrespective of such negligence, then it was not a substantial factor.[6]

■ The burden of proving this causal link is upon the plaintiff.[7] Recognizing that the fact of causation is not susceptible of proof to a mathematical certainty, the law requires only that the evidence show that it is more probable than not that the harm was caused by the tortious conduct of the defendant.[8] Stated differently, it must appear that it is more likely than not that the harm would have been averted but for the negligence of the defendant.

In the instant case the train engineer testified that at a speed of 25 miles per hour he would have been unable to stop the train in time to avoid the accident. Other facts of record support his testimony in this regard. With efficient brakes, the mile-long train required 1250 feet to stop at a speed of 37 miles per hour. It is clear, then, that even at the concededly safe speed of 25 miles per hour, the momentum of the train would have, under the circumstances, carried it well beyond the crossing. This

4. The term, "cause in fact", is used in preference to "proximate cause" because it brings the issue in the instant case into sharper focus.

5. D & D Planting Co. y. Employers Casualty Company, 240 La. 684, 124 So.2d 908; Brown v. S. A. Bourg & Sons, Inc., 239 La. 473, 118 So.2d 891; Hollabaugh-Seale Funeral Home, Inc. v. Standard Accident Ins. Co., 215 La. 545, 41 So.2d 212; Vernaci v. Columbia Cas. Co., La.App., 71 So.2d 417; Alanza v. Texas & Pac. Ry., La.App., 32 So.2d 341.

6. Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298;

Leonard v. Holmes & Barnes, Limited, 232 La. 229, 94 So.2d 241; Shalley v. New Orleans Public Service, 159 La. 519, 105 So. 606.

7. Elfer v. Hibernia Natl. Bank in New Orleans, La.App., 174 So. 287; Paine v. Gamble Stores, Inc., 202 Minn. 462, 279 N.W. 257; 38 Am.Jur. Negligence, § 285, pp. 974–975, § 334, pp. 1033–1034.

8. Harmon v. Richardson, 88 N.H. 312, 188 A. 468; Alling v. Northwestern Bell Telephone Co., 156 Minn. 60, 194 N.W. 313; Prosser, Law of Torts, (2nd Ed.) § 44, pp. 222–223.

finding, of course, does not fully determine whether the collision would have been averted at the slower speed. The automobile was also in motion during the crucial period. This necessitates the further inquiry of whether the automobile would have cleared the track and evaded the impact had the train been moving at a proper speed at the time the trainmen observed the automobile emerge from behind the warehouse.[9] Basic to this inquiry are the speed of the automobile and the driving distance between it and a position of safety.

The testimony of the witnesses is in hopeless conflict as to the speed of the automobile at the time of the collision. The estimates range from a low of 3 miles per hour to a high of 25 miles per hour. Both the district court and Court of Appeal concluded that the speed of the automobile had not been definitely established. Each of these courts found only that the automobile was proceeding at "a slow speed." In her brief the plaintiff states: "The speed of the automobile cannot be determined, at least by the testimony." We conclude that the evidence fails to establish the speed of the automobile with reasonable certainty.

Although the record discloses that the train struck the automobile broadside, it does not reflect the driving distance re-

quired to propel the vehicle from the danger zone.

Finally, we also note that the defendant railroad produced testimony, which is the only testimony of record on this point, that the deceased made no attempt to leave the moving automobile. That he was in the vehicle when it came to rest is undisputed. Moreover, the record fails to reflect the distance required for the deceased to scramble past the diesel engine to a place of safety, had he succeeded in getting out of the automobile.

Despite these deficiencies in the evidence, the plaintiff argues that had the train been traveling at a proper speed the driver of the automobile would "conceivably" have had some additional time to take measures to avert disaster and the deceased would have had some additional time to extricate himself from danger. Hence, the plaintiff reasons, the collision and loss of life "might not" have occurred.

On the facts of this case, we must reject the escape theory advanced in this argument. Because of the deficiencies in the evidence which we have already noted, it is devoid of evidentiary support. The record contains no probative facts from which the Court can draw a reasonable inference of causation under this theory. In essence, the argument is pure conjecture.

9. See Broussard v. Louisiana Western R. Co., 140 La. 517, 73 So. 606; Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W.2d 561; and St. Louis S. W. Ry. Co. of Texas v. Ford, Tex. Civ.App., 237 S.W. 655.

Based upon the evidence of record, it appears almost certain that the fatal accident would have occurred irrespective of the excessive speed, of the train. It follows that this speed was not a substantial factor in bringing about the accident.

We conclude that the plaintiff has failed to discharge the burden of proving that the negligence of the defendant was a cause in fact of the tragic death. The judgment in favor of plaintiff is manifestly erroneous.

For the reasons assigned, the judgment of the Court of Appeal is reversed, and the plaintiff's suit is dismissed at her cost.

HAMITER, J., dissents, being of the opinion that the decree of the Court of Appeal should be affirmed.

HAMLIN, J., dissents with written reasons.

HAMLIN, Justice (dissenting).

I am compelled to agree with the Court of Appeal that in view of the blind crossing the overspeeding by the employees of the Railroad Company was negligence, which was a proximate cause of the accident.

It is my opinion that this train (approximately on mile long, made up of one hundred and thirteen cars and four diesels) should not have entered the Town of Vinton at thirty-seven miles per hour, its speed at the time of the accident. Notwithstanding the rules of the Railroad Company that its speed in Vinton should not have exceeded twenty-five miles per hour, even this speed, under the circumstances found by the Court of Appeal, would be excessive.

I respectfully dissent.