BAILES, Judge.
This action was brought by Wright Root Beer Co., Inc., against Fowler Products Company, Inc., to recover the sum of $229,-000.00 as direct and consequential damages resulting from the use of an allegedly defective soft drink bottling machine pur- ' chased from defendants.
Following a five day trial in the district court, the trial judge rendered judgment in favor of the defendant denying the plaintiff’s claim. From this adverse judgment, the plaintiff has prosecuted this devolutive appeal.
In its petition, plaintiff alleged that it entered into a contract to purchase a certain fifty-spout liquid filler machine from defendant. In this agreement defendant contracted to rebuild and recondition the machine. The base price of the machine was $5,000.00, and the cost of rebuilding and reconditioning it was an additional $3,500.00. Plaintiff alleged that by reason of a breach of defendant’s agreement to rebuild and recondition which was either not done or was defectively performed, and because of the machine being infested with yeast bacteria and spores, the beverages bottled on this machine spoiled, and that plaintiff incurred damages, as a direct or consequential result thereof, in the amount of $229,000.00.
The trial court, in its written reasons for judgment stated:
“ * * *
“To summarize the above, the court concluded that, in the first place, there is no evidence of the cause of the drink spoilage, and in the second place, even if it is conceded that the spoilage resulted from the yeast infestation in the rubber hose, it has not been shown with reasonable certainty that this infestation was brought about by any negligence of the defendant. The court therefore concluded that the plaintiff has not borne the burden of proof in this cause and that for this reason recovery herein must be denied.”
In this conclusion of the trial court, we completely agree and affirm its judgment.
*617 The contention of the appellant is that the lower court erred in concluding that the case rested on the finding of yeast infermentation in the rubber hose of the snift assembly when there were other findings of yeast infermentation, in finding that the plaintiff failed to have quality tests made, and in finding that there were other possible sources of spoilage present. Further, its position is that the court erred in concluding that the rubber hose showed no encrustation when the hose had been removed from the machine for four and a half years. Appellant argues the court fell into error in failing to find that the defendant breached the contract to rebuild and recondition the machine.
The evidence shows that the sale of this bottling equipment was completed and the equipment delivered by freight truck to plaintiff’s place of business in Baton Rouge, Louisiana. The plaintiff set the machine into production of bottled beverages sometime during January, 1961. Defendant had no further contact with the machine after it left its plant in Georgia.
At the time the bottling machine was placed in production, the plaintiff was bottling a chocolate milk drink. The chocolate milk drink continued in production until June, 1961. However, the spoilage of drinks became such a problem at this time, the plaintiff deemed it advisable to discontinue the manufacture and bottling of the chocolate drink.
It is the plaintiff’s contention that prior to the early months of 1961, it had no spoilage of drinks. However, there was about this time, some spotty or sporadic spoilage noticed. By June, 1961, spoilage had progressed to such an extent that any drink it bottled, not consumed within two weeks, spoiled. Plaintiff denies there is any relation whatever between the bottling of the chocolate drink and the spoilage of its bottled goods.
The plaintiff offered testimony, through its witnesses, who were observed by the trial judge, to show that the operation of this machine was satisfactory from a mechanical standpoint. However, begin--ning in May, 1961, some four to five months: after the machine began operating under the’ control of the plaintiff, it began to receive’ spotty complaints from the trade concerning spoilage of its drinks. By June, 1961, the spoilage had reached an alarming proportion and continued to increase until September, 1961. Plaintiff enlisted the services of the William L. Owens Laboratories, Inc., to aid in locating the source of cause of the drink spoilage.
It was first suspected that the spoilage was occurring from contaminated syrup and sugar. I-Iowever, the syrup and sugar system failed to disclose the cause. The second area suspected was the air compressor. After a complete check of this area and the replacement of the air compressor, the spoilage continued. Then the bottling and washing machine was inspected and passed as not the source of contamination. Subsequently, the snift assembly was investigated. The laboratory report on this component of the machine showed that an one-inch section of the rubber hose bore 3000 yeast spores.
The plaintiff, however, has failed to show that this yeast contamination was the cause of the spoilage of the drinks being bottled. At no time were tests run on the bottled drinks to determine what was actually causing the spoilage. Mr. William Howell, the president of the plaintiff corporation, testified that no qualify control tests were run on the bottled product even though the spoilage continued and various corrective measures were taken from March of 1961 through September of 1961. He testified that he believed that he brought some bottles of the drink to the Owens Laboratory but Dr. Owens in his deposition stated that the laboratory checked only parts of the equipment used by the plaintiff company.
Plaintiff rests his claim on the supposition that yeast caused the spoilage. Dr. William *618 L. Owens, plaintiff’s own witness, testified in bis deposition that there are several species of yeast. Though yeast spores were found on the inside of the snift assembly, the plaintiff has failed to prove that this species of yeast had any causal connection to the spoilage of the drinks, or that the rubber hose on the snift assembly was contaminated with the yeast spores when the machine left defendant’s possession and control.
The jurisprudence is well settled that one entitled to recovery must make and establish his claim to a legal certainty. It does not suffice for the plaintiff to make out a case that is merely probable; he must establish his claims to a legal certainty by a reasonable preponderance of the evidence. Duhon v. Cormier (La.App.1966) 186 So.2d 645, Martin v. Westchester Fire Insurance Company (La.App.1966) 183 So. 2d 769, Gassiott v. Gordey (La.App.1966) 182 So.2d 170, Hayward v. Carraway (La. App.1965) 180 So.2d 758, Perkins v. Texas & New Orleans Railroad Co. (1962) 243 La. 829, 147 So.2d 646, and Naquin v. Marquette Casualty Co. (1963), 244 La. 569, 153 So.2d 395.
In discharging this burden of proof, the plaintiff must not only prove what caused the spoilage of its bottled products but also must show that the defendant is responsible for this spoilage.
The plaintiff stresses the point that this machine was not sterilized prior to leaving the defendant’s plant. However, the testimony shows that even new machines are not sterilized prior to delivery. One of the plaintiff’s witnesses, Mr. Louis Cusachs, a chemical engineer, testified that yeast spores could be on new machinery if that machinery had been exposed to air. It cannot be said that the defendant was guilty of negligence in failing to sterilize the machine prior to shipping the equipment to the plaintiff. Plaintiff is clearly responsible for the sterilization of its machine prior to putting it in service of bottling drinks for human consumption.
The appellant further contends that the defendant was negligent in failing to thoroughly disassemble and clean this machine and in failing to remove the rust, corrosion, and dirt on the subassemblies of the bottling machine. Though the appellant argues that this rust and corrosion was present when the defendant delivered this machinery, no testimony was offered to this effect. The witnesses testified only that after eight months of use, the machine was dissassembled by the plaintiff’s employees and rust and corrosion were noted at this time. The appellant failed to offer any testimony to show that the defendant had been negligent in performing its duties under its contract to rebuild and recondition this equipment, and further, there is a total absence of any showing of causal relationship between the work performed by defendant and the spoilage of the drinks.
On the other hand, the defendant offered the testimony of Mr. Hugh Fowler, president of Fowler Products Company, and Mr. Carl Lee Randolph, the supervisor of overhauling bottling machinery for defendant. These witnesses testified that the machine had not been sterilized but had been steam cleaned. They stated that where a visual inspection is possible, it is not necessary to completely disassemble the equipment but every part of the machinery was at least visually inspected. Following the checking and replacing of worn parts, every operation of the equipment was tested and found to be working properly.
In passing, we note that the plaintiff had been engaged in the bottling of chocolate drink from November, 1961, until June, 1962. Plaintiff’s own witness, Mr. Earl Zimmer who was in charge of the bottling process, testified that the bottling of chocolate, a milk-based drink mixed from a very fine powder, is extremely dangerous because of its susceptibility to spoilage. The testimony of Mr. William *619 Howell, president of the plaintiff company, shows that special equipment was purchased for the bottling of the chocolate drink and that the ingredients of the drink did not go through the bottling machine used for the bottling of root beer. However, his testimony was that the chocolate drink is made from a fine powdered milk-looking substance and that this was mixed in the syrup room of the company. Dr. Arthur Keller, a professor of chemical engineering, stated that mixing the powder for chocolate drink in the same room where syrups are mixed for carbonated beverages is very poor practice. He stated that there would be a strong risk of dust from the milk contaminating the syrups. It should also be noted that the men employed by the plaintiff company testified of a terrible stench when various parts of the machine were checked. Mr. Louis Cusachs, the plaintiff’s expert, stated that the high protein content of the chocolate product causes a terrible odor when it becomes contaminated, but the yeast gives off a “meaty odor which smells something like bouillon.”
The testimony of the plaintiff’s witnesses further shows that the sterilizing process used by the plaintiff’s employees was not satisfactorily accomplished. Mr. Earl Zim-mer testified that he mixed Kelvar, a detergent, and Sterichlor, a sterilizer, together to form one solution and then proceeded to run these through the machine at least once a week, after first flushing out the machine with fresh water. Mr. Arthur Broom, one of plaintiff’s witnesses, who trained Mr. Zimmer stated that he never combined these processes but made a separate solution with each and ran each solution through the machine. Mr. Arthur Keller, the defendant’s expert witness, stated that the normal practice is to clean the machine first and sterilize later. He further testified that by combining the solutions, the chlorine would be diluted. The chlorine, he stated, would react faster than the detergent and would be used up; therefore, to use the solutions together and accomplish the sterilization of the equipment, it would be necessary to use more chlorine in a stronger concentration.
While the plaintiff has emphasized the fact that the snift assembly and particularly the rubber hose of this assembly was heavily encrusted with filth and contamination, an examination of these parts shows only a very thin deposit inside the hose and is not suggestive of any unusual encrustation. Some of the testimony relative to this rubber hose is that it obviously was not replaced by the defendant but other testimony indicates that its condition in September, 1961, could have been caused by detergents and sterilizing chemicals which were used on the machinery after plaintiff put it into operation. We do not believe the condition of this hose is such as to warrant the conclusion that it was heavily encrusted or filthy.
It is our opinion that the plaintiff has failed to prove by a fair preponderance of the evidence the cause of the drink spoilage, or that the spoilage was occasioned through any fault of the defendants. The possibilities and suppositions on which the plaintiff has based its claim will not support a judgment in its favor.
Accordingly, for the reasons assigned, the judgment appealed from is affirmed. Appellant to pay all costs of this appeaL
Affirmed.