SAMUEL, Judge.
Plaintiff filed this suit for $9,113.80, allegedly the amount of damages occasioned to its rolling equipment and tracks when a plaintiff train was derailed as a result of a switch having been opened by a 14 year old boy who was accompanied by his 11 year old brother. The answer of the two defendants, the father of the two boys and his insurer, denied liability and pleaded contributory negligence.
After trial there was judgment in favor of plaintiff in the amount of $5,103.17. The defendants have appealed. In this court they contend plaintiff cannot recover because it was guilty of contributory negligence which proximately caused the accident. Plaintiff has answered the appeal seeking a finding of no negligence on its part (the trial court found plaintiff had been negligent but that such negligence had not been a proximate cause of the accident) and an increase in the award to the amount prayed.
The facts of the accident are not in dispute. It occurred at about 12 o’clock noon *156 on April 9, 1967 in St. Rose, Louisiana. While the two boys had been walking along plaintiff’s right of way they examined one of the main track switches. There was a padlock on the switch but it was open. The elder boy removed the opened padlock and turned the switch. Just at that time the smaller child informed his brother a train was coming and the two boys attempted to close the switch but were unable to do so; the switch points remained open just enough to cause the derailment. The boys ran away before the accident actually occurred.
The approaching train was proceeding at a normal speed. The switch was opened at a most inopportune time, just after the engine had passed the block signal which had given the train crew a clear green indication showing the switch was in proper closed position. The crew was unable to avoid the accident because it was impossible to stop the train (composed of the engine, 36 cars and a caboose) following their observation of the signal after it had turned red and prior to the time the engine reached the point of derailment. The engine and three cars were derailed and the engine, those cars and a portion of the tracks were damaged.
The padlock used to lock the switch could be opened with a key furnished by plaintiff to its employees. The switch would have remained in proper closed position if it had not been opened by the Cullen boy. Although in good working order when discovered by the boys, the padlock was open in violation of a plaintiff regulation requiring that the switch be locked and left in that condition and despite the fact that a plaintiff track inspector had passed the switch several hours before the accident occurred. The record reveals the regulation referred to was adopted by plaintiff to prevent unauthorized persons from tampering with its switches and to keep vibrations from opening them; to the extent that its purpose was to prevent injury to plaintiff employees and damage to plaintiff property as a result of switches being open when they should be closed, it was a safety regulation.
Defendants’ contention relative to contributory negligence is that plaintiff’s violation of its own “locked switch” regulation constituted such negligence, citing Perkins v. Texas And New Orleans Railroad Company, 243 La. 829, 147 So.2d 646. We do not agree.
Perkins does hold that a violation by its trainmen of a railroad’s own speed regulation adopted in the interest of safety is evidence of negligence. However, in Perkins and in the two cases cited to support that holding the plaintiffs had been injured or damaged as a result of railroad negligence consisting of the operation of a train at an excessive speed. Basically, negligence resulting in liability in tort, and contributory negligence in tort cases, is the breach of a legal duty owed by a litigant to an opposing litigant. In the cases referred to, either in the presence or in the absence of railroad speed regulations, the defendant railroads owed a legal duty to the injured or damaged plaintiffs to operate their trains at a speed which was proper and reasonable insofar as the persons and property of the plaintiffs were concerned. They breached that duty, and consequently were negligent, by operating at a speed excessive under the circumstances.
In contrast to Perkins the instant case does not involve injury to the Cullen boys, who were not in any danger because they were out of the immediate vicinity of the accident when the derailment occurred, or damage to defendants’ property. Our attention has not been called to any legal duty to keep the switch locked owed by the plaintiff to the boys under these circumstances and we know of none. Nor is such a duty created by the “locked switch” regulation. As the open switch did not violate a legal duty owed by plaintiff to the two Cullen boys, the fact that such a switch was a violation of a plaintiff regu *157 lation does not constitute plaintiff negligence in this case and cannot be used by the defendants to avoid liability for the tort committed by the boys.
We now address ourselves to the remaining issue, the increases in the amount of the judgment award sought by plaintiff in its answer to the appeal. Using its own equipment, facilities and employees, plaintiff itself performed the work of rerailing the engine and the three cars and of repairing the damages caused by the accident. The only evidence relative to the cost of that work was offered by the plaintiff. That evidence consisted of a bill prepared in its Chicago office of Manager Disbursements, Accounting, on the basis of information received from other plaintiff employees. . The bill was offered and received in evidence in connection with the testimony of a Supervisor of the Chicago office. Other than the bill and the testimony of the Supervisor the record contains no evidence as to the amount of plaintiff’s damages.
The increases sought by plaintiff are the following portions of the bill which are not included in the judgment: (1) “overhead” charges of 15%, 30% 28.7075% and 33.-7075% made on items identified in the bill as materials, equipment rental, engine service, labor, wrecker expense and track repairs; (2) trackage charges; (3) repairs to two of the derailed cars; and (4) two small items of $3.28 for “personal expense” and $18.41 for materials.
The testimony of the Supervisor constitutes the only evidence relative to the manner in which the bill was drawn up. He stated, very briefly, that the charges were made pursuant to an agreement, known as the General Managers Association Rules, entered into by twenty-five major railroads for the purpose of those railroads making the same charges among themselves insofar as rental rates and labor and material additives were concerned. He further testified the same rules are followed by the agreeing railroads, and particularly by plaintiff, in charging other parties for similar work. Plaintiff argues that its charges based on the rules of the General Managers Association are sufficient proof of actual damage, citing Baltimore And Ohio R. Co. v. Commercial Transport, Inc., 7 Cir., 273 F.2d 447.
The cited case is clearly distinguishable. It was tried to a jury and the only issue material here was whether the trial court erred in admitting a copy of the current rules (or, the opinion is not clear on the point, a pertinent portion of those rules) and the testimony offered in connection therewith. Detailed testimony was offered to substantiate the propriety and correctness of the rules and the charges made thereunder. That testimony, given not only by a plaintiff Inspector of Accounts but also by the secretary of the General Managers Association, established to the court’s satisfaction that the percentage for-mulae contained in the rules were accurate and correct.
While we are aware of the fact that the reasonable cost of repairs made by a plaintiff and his employees is not limited to the amounts actually paid for wages and materials, it was incumbent upon plaintiff in the instant case to offer sufficient proof that the rules upon which its charges were based accurately reflected the total, overall cost of doing the work in suit. The only evidence on that subject, the testimony of plaintiff’s supervisor which is set forth above, fails to establish that fact and therefore fails to establish the actual cost of all of the work. Under these circumstances plaintiff has not carried its burden of proving to the required legal certainty all of the damages it seeks. This is particularly true as to those damages which do not appear to be reasonable.
“Overhead” charges of 15%, 30%, 28.7075% and 33.7075% without further and sufficient explanation certainly do not *158 appear to be reasonable and ordinary charges and in the absence of such explanation we cannot conclude the same were properly made. The trial court was correct in refusing to render a judgment awarding plaintiff those “overhead” charges.
Plaintiff’s second complaint, the trial court’s refusal to allow trackage charges, also is without merit. Those charges were for the use by plaintiff of its own tracks in the work of rerailing and repairing. In the absence of a sufficient showing that the rules under which the charges were made are proper and correct, and as we have pointed out no such showing has been made, or that plaintiff actually suffered a loss directly attributable to such use of its tracks, and the record is devoid of any proof of that fact, plaintiff is not entitled to a judgment for the trackage items.
Plaintiff’s third complaint is concerned with its claim for repairs to two of the derailed cars, an item which appears on the bill received in evidence only as “estimated cost to repair freight cars” with the initials and number designations of the two cars and the cost figures, $250 and $595, a total of $845. The record contains no other evidence relative to the repair of the two cars. No estimate was introduced or sought to be introduced, no evidence was heard on the estimate, no actual cost of repairs was offered, and no testimony of any kind was given in connection with the charge despite the fact that the accident happened on April 9, 1967 and the case was tried on January 6, 1969. Under these circumstances the trial court was clearly correct in refusing to render a judgment for the charge of those repairs.
Finally, plaintiff’s last complaint is concerned with $3.28 for “personal expense” and $18.41 for materials. The $3.28 item appears on the bill and is labeled only “personal expense”. No further evidence was offered in connection with that item and we have no idea what the same is for or whether or not it is in any way connected with costs sustained by plaintiff as a result of the accident in suit. Accordingly, we conclude the trial court properly denied the same. The $18.41 item for materials apparently was overlooked by the trial court and we will add that amount to the judgment in favor of plaintiff.
For the reasons assigned, the judgment appealed from is amended so as to increase the amount awarded from $5,103.17 to $5,121.58. As thus amended, and in all other respects, the judgment appealed from is affirmed; costs of this appeal to be paid by the defendants-appellants.
Amended and affirmed.