The one and one-half story frame residence of William H. Phillips, Jr., in the City of Shreveport, Louisiana, while being re-roofed by defendant, H. H. Bain Roofing Company, Inc., was damaged from fire to the extent of $1,953.25. This amount was paid to Phillips by plaintiff, his insurer, to whom he executed a subrogation of his rights of action against any person, firm or corporation through whose negligence the fire loss occurred. Under this subrogation plaintiff instituted the present suit against defendant, the H. H. Bain Roofing Company, Inc., to recover the amount paid by it to Phillips.
Defendant, under a contract with Phillips, was re-roofing the building by nailing composition shingles on top of the old wooden ones. This work had been going on for several days and the larger portion of the roof had been recovered. The work of laying the shingles was being done by defendant's employee, Clell H. Driscoll, assisted by a negro boy.
The fire occurred the afternoon of July 9, 1945. Driscoll and his helper worked that day until 5 o'clock or near thereto, and then left. Not over 45 minutes thereafter it was discovered that the old part of the roofing adjacent to the re-covered portion, was ablaze. *Page 140 
Plaintiff prosecutes this suit on the theory that the fire occurred by and through the negligence and carelessness of defendant's employees in the following respects, to-wit:
"1. In striking a match and smoking on the roof of said dwelling and in exposing the said roof to fire.
"2. In failing to see that the roof was not on fire before quitting work.
"3. In failing to perform their work in a workmanlike manner in exposing said roof to fire either by a lighted match, smoldering cigarette or other smoking tobacco."
Defendant denied that the fire was caused or resulted from any negligence or carelessness of its employees. Plaintiff's demand was rejected and its suit dismissed. This appeal is prosecuted by it. Defendant does not controvert its liability if the issue of fact is resolved against it.
Our appreciation of the testimony leads to the conclusion that the fire originated on top of that part of the roof of the building that had not been re-covered. The wooden shingles thereon were many years old, decayed, and, at the time very dry. In this condition they were easily ignited and burned rapidly after the fire had made sonic headway. The location of the electric wiring in the attic and the drops in the second story rule out the possibility of the fire having originated therefrom. For several hours prior to the fire the gas range had not been used and there was no light burning, save the pilot lights of the range and hot water tank, both being located on the ground floor. These facts negative any possibility of the fire having originated from within the building.
Mr. Driscoll smoked cigarettes continuously while working and did so the day of the fire. He lights them from matches and on direct examination testified that he invariably pitches the butts and the matches to the ground when working above it, and is certain he followed this practice while working on the Phillips home, but on cross examination he modified what he said in this respect by testifying as follows, viz:
"Q. Now, Mr. Driscoll, you say that you threw your cigarettes off the roof. How do you do it; just flip them? A. Yes, sir.
"Q. Did you follow them to see where they landed? A. No.
"Q. You flipped, and assumed that they were going off the roof? A. Yes, sir.
"Q. Have you ever missed your aim in flipping a cigarette? A. Once in a while, yes."
He is certain that when he and the negro boy quit work the afternoon of the fire there was no evidence of fire on the roof. He also testified that the boy had no cigarettes of his own and smoked only when he gave one to him. At the date of trial the boy was in the military service of the Government and his testimony was not taken.
Mrs. Phillips left the residence about 4:30 o'clock p.m. Mr. Driscoll had not then quit work. She then saw him sitting on the peak of the roof smoking. She returned after a lapse of approximately 30 minutes and went into the house, but did not discover that the roof was on fire. The workmen had gone.
Mr. Phillips returned home from work at about 5:15 o'clock p.m. and also went into the house without discovering the fire. After the lapse of some 15 minutes his young son, who had gone out of the building into the street it faced, discovered the roof burning. He at once notified his father who called the fire department. The blaze was quickly extinguished.
It is only 15 feet from the sidewalk to the steps of the Phillips residence. This doubtless accounts for Mr. and Mrs. Phillips not seeing the fire when they last entered the building as it was located between 10 and 15 feet from the building's front end.
The testimony is inconclusive as to the exact area that was involved in the fire. Different witnesses gave different estimates thereof, but we feel certain the burned area covered at least 50 square feet. It extended from near the eaves up toward the peak of the roof, and could be seen from within the building through the sheeting attached to rafters for a few feet from the wall. *Page 141 
It is shown that there were no fires on the premises adjoining the Phillips home the afternoon of the fire, and that there are no factories or other plants within many blocks, from which sparks or cinders are emitted. Spontaneous combustion is ruled out. It was a hot day. There was no wind.
Plaintiff argues with much force, in fact, convincingly, that conditions in and about the building at the time of the fire, revealed from the testimony, rule out every possibility of the fire's origin being other than from a burning cigarette or match carelessly tossed by Mr. Driscoll upon the inflammable old roof immediately prior to quitting work.
The testimony of Mr. Driscoll does not preclude the probability of the fire originating from his negligence; that is, from a lighted match or cigarette butt inadvertently tossed upon the old roof by him. Had he not qualified his testimony on the subject he would have made himself amenable to a charge of being absolutely certain on a subject about which, in all sincerity, he could not well have been. A workman who concentrates his thoughts upon a task before him, one to be executed with precision, such as laying shingles, at times becomes oblivious to conditions about him and involuntarily will perform some act or acts pertaining to a long standing habit. This is but a consequence of long and continuous repetition.
It is certain that when Driscoll quit work there was no blaze on the roof. Surely, had the fire at that time progressed to any appreciable extent, he would have observed it. But, it is not at all certain that when he ceased work there was not a butt of a burning cigarette or a lighted match, smoldering under the exposed part of an old shingle, the fire from which had not then progressed to the point of generating noticeable smoke or blaze.
[1, 2] To warrant judgment for plaintiff, it is only necessary to find that it has proven by a preponderance of the evidence the truth of the essential allegations of the petition. Even in a case of this character it is not necessary, as is true in criminal cases, that the cause of the fire be proven beyond a reasonable doubt.
[3] When we take into consideration, weigh and give deserved credit to the undisputed facts of the case, the conclusion irresistibly arises that the fire, for all legal intents and purposes, has been proven to have been due to the negligence of defendant's employee.
Defendant offered no evidence to rebut the strong circumstantial case made out by plaintiff, but suggests the possibility of the fire having originated from a burning rag or other object dropped by an airplane or by a bird flying over or lighting upon the building. The best that may be said of this is that it is barely possible the fire could have started in either manner, but it is not reasonable to go further.
Defendant cites and quotes from the case of Cannon v. Winnfield Oil Gas Co., 4 La. App. 384, decided by this court some years ago, wherein it is said and held that: "In order to hold a defendant for damages for an act complained of on circumstantial evidence, the circumstantial evidence must be sufficiently strong to exclude every other reasonable hypothesis other than that defendant's act was the proximate cause of the injury."
The rule of evidence embodied in this quotation finds appropriate application in criminal cases where the prosecution relies wholly or chiefly upon circumstantial evidence, but it does not apply in civil cases where, as heretofore said, only a preponderance of the evidence is required to make out a case for plaintiff. However, we will add that the circumstantial evidence in the present case is so cogent as to exclude every reasonable hypothesis other than that the fire occurred in the manner charged by the plaintiff.
Both sides cite several fire cases to support their respective position. Cases of this character, more so, perhaps, than others, have to be determined each from its own peculiar facts. Meager comfort is found in a study of other cases involving fire losses.
For the reasons herein given, the judgment appealed from is annulled, avoided and reversed, and, the law and evidence being in favor thereof, it is now ordered, adjudged and decreed that plaintiff, North *Page 142 
River Insurance Company, do have and recover judgment of the defendant, H. H. Bain Roofing Company, Incorporated, for the sum of $1,953.25 with legal interest thereon from judicial demand until paid, and for all costs of suit.