LANDRY, Judge.
This is a tort action wherein plaintiff, Earl L. Ewen, seeks damages from defendant David Bloch for the destruction of a building and the loss of its contents by fire alleged to have been started by defendant upon his own property and negligently permitted to spread to plaintiff’s adjoining premises. The trial court rejected plaintiff’s demands and from said adverse ruling, plaintiff has taken this appeal.
The record reveals that plaintiff and defendant own adjoining commercial establishments fronting on Mississippi Street in the City of Donaldsonville, Louisiana. Although the record is not clear regarding the direction in which the buildings faced, we are of the impression they fronted easterly and therefore assume, for the purpose of the discussion which follows, that the buildings in question faced toward the east.
Explanation of the location and nature of the adjoining premises as well as certain conditions and practices which obtained prior to the fire in question, is essential to an understanding of the mixed questions of fact and law posed by the instant appeal.
Plaintiff’s principal establishment consisted of an army surplus goods store to the rear (west) of which was situated a storage shed which latter structure was unattached to the former and separated therefrom by an intervening space best described from the record as “undetermined”, but in all prooaDility being only a few feet considering the record shows only that the shed was “near” the rear of plaintiff’s building. This shed, which measured approximately 56 feet in width faced easterly or toward the back of plaintiff’s main building. It was of frame construction; its roof was covered with corrugated iron as were its north, west and south sides also. The front or eastern side of the shed was open. The depth of the shed was 24 feet running back or westerly toward the rear of plaintiff’s premises. Commencing at the southeast corner of the shed plaintiff erected a fence approximately 8 feet in height by nailing corrugated metal sheeting to a supporting framework. Said fence extended easterly toward Mississippi Street to an undisclosed point east of the rear of defendant’s building.
Defendant’s premises abutted plaintiff’s on the south, the properties being separated by an alley of undisclosed width. The depth of defendant’s building is not shown although photographs of record clearly indicate it does not extend back or westerly quite as far as plaintiff’s store.
Both plaintiff’s and defendant’s premises are bounded on the west by a concrete parking lot belonging to the First National Bank. Plaintiff’s aforesaid storage shed is situated in the extreme southwest corner of plaintiff’s lot, being bounded therefore on the west by the aforementioned parking lot and on the south by the vacant rear or western end of defendant’s property which is used by defendant and his employees as a parking area. The parking area to the rear of defendant’s establishment is bounded on the east by defendant’s clothing store, south by an undisclosed owner, west by the bank parking lot and north by plaintiff’s hereinabove described shed and fence. The dimensions of defendant’s aforesaid parking area are not shown except that it was sufficient to permit parking three vehicles south of plaintiff’s shed, behind defendant’s building, facing easterly parallel to each other and the south side of plaintiff’s storage facility.
*316 It was defendant’s custom to bum trash in a homemade incinerator which he kept in the rear of his building. The mentioned device consisted of a 50 gallon steel drum converted into an incinerator by the simple expedient of cutting out the metal top in such manner that it could be used as a lid to cover the barrel when in use as an incinerator. The precise location of this incinerator on the date of the fire is understandably a matter of considerable dispute between the litigants.
Defendant acknowledges that on the afternoon of September 11, 1959, between the hours of 3 and 4 p. m., he started a fire in the aforesaid incinerator. According to defendant, the fire consisted of his burning several loose scraps of paper which he discovered on the parking area behind his store. He placed the paper in the barrel, ignited it with a match, placed the cover on top so that it covered half the barrel thereby permitting combustion, watched the paper burn approximately five minutes until the fire was completely out and then returned to his establishment. Shortly thereafter he returned to the area behind his store, discovered plaintiff’s shed on fire and immediately spread the alarm.
Plaintiff pleads the doctrine of res ipsa loquitur and alternatively defendant’s negligence in: (1) Violating a municipal ordinance by igniting a fire within 50 feet of plaintiff’s shed; (2) Failing to contain said fire in an approved waste burner as specified by City ordinance; (3) Permitting said fire to spread to plaintiff’s premises; and (4) Failing to take proper safeguards to confine the fire to the incinerator and prevent its spread to plaintiff’s premises. Learned counsel for appellant maintains the trial court erred in holding appellant to a higher degree of proof of causal connection than is required by established jurisprudence in cases of this character. In this regard esteemed counsel for appellant relies heavily upon Naquin v. Marquette Casualty Company, 244 La. 569, 153 So.2d 395 and Rosebery v. L. O. Brayton & Co., La.App., 4 So.2d 777. The Naquin case, supra, announces the general rule that causation may be established by circumstantial evidence which, to establish a cause of action, need only exclude other reasonable hypotheses with a fair degree of certainty and need not necessarily negate all other possible causes. The Rosebery case, supra, which deals specifically with the obligation of one who intentionally sets a fire on his own premises for a lawful purpose, imposes liability upon such an owner in the event of his negligence either in starting the fire or guarding against its spread to adjoining properties. On these premises astute counsel for appellant argues that when plaintiff established defendant’s intentional starting of the fire on his own premises and the possibility of its spreading to plaintiff’s adjoining structure and no other possible source or cause of the burning of plaintiff’s property is shown, the burden shifted to defendant and it was then incumbent upon appellee to establish his freedom from negligence. It is further contended appellant has discharged the burden of proof imposed in fire cases as stated in the Rosebery case, supra, and our esteemed brother below erred in ruling to the contrary.
The testimony is overwhelmingly to the effect that defendant’s incinerator was customarily placed near the extreme rear of his premises, close to the adjoining bank parking lot, at a point approximately 20 feet to the south and parallel to the rear or western end of plaintiff’s shed. It further appears that three cars were daily parked to the rear of defendant’s building and to the south of plaintiff’s shed. Mrs. Rodriguez, an employee of defendant, parked her vehicle nearest appellant’s shed between the incinerator and said structure. Gaston Hirsch, a tenant of defendant, parked his vehicle parallel and to the south of Mrs. Rodriguez and defendant parked his car alongside and south of Hirsch’s. The vehicles thus parked were stationed *317 with their front ends facing the rear of defendant’s building and located only a few feet therefrom. The rear ends of the cars were some distance east of the west end of defendant’s property. It likewise appears defendant had engaged in burning trash in the incinerator at the location noted for a number of years prior to the incident in question.
Defendant testified that on the day in question the incinerator was situated at its usual place approximately 20 feet from the southwest corner of plaintiff’s shed. His testimony that he remained with the fire until it was totally out before returning to his store is somewhat weakened by his later statement to the effect he re-emerged from his establishment for the purpose of checking to see that the smoke had not developed into a fire which might endanger Mrs. Rodriguez’s automobile parked between the incinerator and plaintiff’s shed. When he did so, he discovered the fire, warned Mrs. Rodriguez, proceeded to plaintiff’s establishment, notified an employee of plaintiff found therein and summoned the fire department.
Mrs. Rodriguez testified that when warned of the fire she immediately went to the parking area and removed her vehicle. The essence of her evidence is that in her haste she did not at that time observe the position of the incinerator but was reasonably certain it was in its usual place about 20 feet from plaintiff’s shed.
Paul E. Ewen, plaintiff’s brother, testified he was summoned to the fire in his capacity as member of the Donaldsonville Volunteer Fire Department. Upon arrival he noted the presence of the incinerator within six inches of the south wall of plaintiff’s building and also observed the contents of the incinerator were burning. In this respect the testimony of Ewen stands alone. No other member of the fire department recalled seeing the incinerator near plaintiff’s shed and defendant’s testimony contradicts that of Ewen inasmuch as defendant unequivocally stated the incinerator was in its usual place situated approximately 20 feet from plaintiff’s shed. On this most crucial issue defendant is corroborated by the testimony of Hirsch who-stated the incinerator was approximately 18 to 20 feet from the shed.
The testimony as a whole, viewed in connection with certain diagrams made by the witnesses and offered in evidence, warrants the conclusion the incinerator was in fact situated approximately 20 feet south of plaintiff’s storage shed. We are also convinced that although Mrs. Rodriguez stated her car was between the incinerator and the shed, it was actually parked several feet to the east of the incinerator which spot she reached by driving in the approximately 20 foot interval which separated defendant’s incinerator from plaintiff’s shed. The significance of the foregoing is that Mrs. Rodriguez’s vehicle was not actually standing on a line between the incinerator and shed and therefore did not constitute a physical barrier between those two objects. While no issue is made of this point by either party, we deem it advisable to point up the fact because of its tendency to raise the question of the effect of a spreading fire upon an intervening obj ect.
Able counsel for appellant suggests defendant’s fire could have spread to plaintiff’s premises in one of the following ways: (1) Sparks and cinders could have been blown by the wind through a triangular wall opening under the eave at the southwest corner of the shed; (2) The fire could have ignited grass which covered the lot and extended under plaintiff’s shed, and (3) Sparks and cinders could have been blown by the wind over the iron fence and into the open eastern side or front of the shed.
The evidence reveals there was a triangular hole near the roof of the shed along the top of the south wall. The hole measured approximately one foot in width at the southwest corner and tapered to a point about midway the south walL A1- *318 though plaintiff attempted to establish the presence of a strong wind on the afternoon in question, the evidence preponderates against the conclusion there was sufficient wind to blow incendiary material out of the trash burner and into the relatively small opening approximately 20 feet distant. Neither does the record disclose that the fire was of such intensity that its self-generated draft could carry burning materials out of the burner to be borne by the wind.
Considering appellant’s suggestion the fire ignited grass on the lot and thus spread to plaintiff’s shed, we have carefully examined the evidence and find not one iota of evidence to support such a finding. Not one witness testified the grass around the incinerator had ignited.
'The contention that burning material was wind borne to the east, carried over the iron fence and thence into the open east side of plaintiff’s building is rather strained and unsupported by evidence of record. For the fire to have spread in this manner there would have had to be wind of considerable intensity blowing in a northeasterly direction. The evidence shows a lack of such winds on the occasion in question. Moreover, had the fire started in this manner we believe it would have commenced near the front or east side of the shed. The evidence establishes beyond doubt the fire started in the southwest corner in a portion of the shed which had been converted into a room used by transient laborers as living quarters.
Appellant’s invocation of the doctrine of res ipsa loquitur is based on the premise that a defendant who negligently starts a fire or carelessly permits its spread, bears the burden of proving that the fire which damaged another’s property was caused by some other means. In support of this contention appellant introduced the Donald-sonville Fire Prevention Code, the pertinent portion of which reads as follows:
“Article 14, Section 1401. Bonfire and Outdoor Rubbish Fires.
******
“b. Location restricted. No person shall kindle or maintain any bonfire or rubbish fire or authorize any such fire to be kindled or maintained on any private land unless (1) the location is not less than 50 feet from any structure and adequate provision is made to prevent fire from spreading to within 50 feet of any structure, or (2) the fire is contained in an approved wasteburner with closed top, located safely not less than 15 feet from any structure. * * * »
Since defendant’s incinerator was admittedly within 50 feet of plaintiff’s shed, the question is whether the second clause of Section 1401(b) applies. From the evidence it must be concluded the incinerator was more than 15 feet from appellant’s shed. Defendant himself testified it was approximately 20 feet distant and it is undisputed that it was so situated there was sufficient room for Mrs. Rodriguez to park her car in the area which intervened between the southwest corner of plaintiff’s building and the position occupied by the incinerator. To conclude the incinerator was within 15 feet of plaintiff’s building would be speculation totally unjustified by a preponderance of the recorded evidence. Furthermore there is no evidence that the incinerator was not “located safely” nor is there any testimony to the effect the burner was not an “approved waste burner” with a closed top in violation of the requirement of the city ordinance cited. The evidence is conflicting on the question of the type of cover provided for the burner. One witness stated the drum had a solid cover which was used to partially cover the burner when in use. Another testified the burner was covered with a metal top containing air holes. The record is devoid of *319 testimony as to what constitutes an "approved waste burner with dosed top” and no definition thereof in the applicable ordinance has been called to our attention. We cannot assume the type of incinerator used by defendant was in violation of the Code. Such element being necessary to establish plaintiff’s cause, proof thereof was the responsibility of appellant
Appellant’s contention the doctrine of res ipsa loquitur is applicable to the instant case is without merit The doctrine of res ipsa loquitur is a rule of law giving rise to a presumption of negligence under certain circumstances. For the doctrine of res ipsa loquitur to apply, the injury complained of must be shown to have resulted from an agent or instrumentality within defendant’s exclusive control and under circumstances such that plaintiff’s injury would not have occurred but for the negligent conduct of defendant. In such instances the rule recognizes that because knowledge of the cause rests exclusively with defendant, plaintiff cannot reasonably be expected to know or explain the precise nature of defendant’s negligence. The doctrine, when applied, is a rule of evidence to be invoked in each instance at the conclusion of the trial and in the light of the evidence as a whole. When the doctrine is applied, the accident causing the injury makes out a prima facie case of negligence which defendant must then rebut Day v. National U. S. Radiator Corporation, 241 La. 288, 128 So.2d 660.
It is elementary that for the doctrine to apply, plaintiff must establish that the cause originated by the action of defendant. The rule is stated thusly in Am. Jur. Vol. 22, Verbo Fires, Section 75, Page 642:
“GENERALLY—The well-settled rule that the burden of proof is upon the party who has the affirmative of an issue and remains upon him throughout the trial is applicable in actions for the recovery of damages caused by fires. Accordingly, where negligence or misconduct is the gist of the action, the burden rests upon the plaintiff to establish such negligence or misconduct by a preponderance of evidence, although he may be aided in establishing a prima facie case by certain presumptions. Under statutes which impose absolute liability for loss by fire, it is of course not necessary for the plaintiff to establish, as part of his case, the negligence of the defendant, but, as a general rule these statutes neither diminish nor increase the plaintiff’s burden in the matter of proof concerning the origin of the fire, and mere proof that the fire which destroyed neighboring property originated upon the right of way of a railroad is not generally sufficient to hold the railroad company liable for the loss, where it is made liable by statute for damages caused by fire originating from engines, or from acts of employees under the company’s direction, or in the construction or operation of the road. * * * ”
It is also recognized that the circumstances under which a fire occurs may be such as to justify application of the rule of res ipsa loquitur. We do not find, however, the existence of such circumstances, in the case at bar.
It is of the utmost importance that in the instant case plaintiff has failed to establish to the degree of certainty required by law that the fire which destroyed his property originated from defendant’s premises. Having failed in this regard and also having failed to show exceptional circumstances which would justify application of the doctrine of res ipsa loquitur, plaintiff may not avail himself of the benefits of the presumption resultant therefrom.
We do not agree with the contention of learned counsel for appellant that Rosebery v. L. O. Brayton & Co., La.App., 4 So.2d 777, is authority for the proposition that an owner who intentionally starts a *320 fire on his own premises assumes the burden of proving his freedom from negligence when plaintiff shows the possibility of the fire spreading to plaintiff’s premises and the absence of any other cause which could have started the conflagration resulting in plaintiff’s loss.
Our most careful perusal of the Rosebery case, supra, discloses that it establishes the principle that an owner who intentionally sets a fire on his own premises is liable in the event he negligently permits its spread to adjoining property. Neither the Rosebery case nor the remaining authorities of Perkins v. Texas and New Orleans Railroad Company, 243 La. 829, 147 So.2d 646; Castille v. Cormier, 144 La. 640, 81 So. 210 ; North River Ins. Co. v. H. H. Bain Roofing Co., La.App., 30 So.2d 139, and Prescott v. Central Contracting Co., 162 La. 885, 111 So. 269, cited and relied upon by counsel for appellant, established the rule advanced by counsel. We have considered all said cases dealing with fire claims and observe that they require plaintiff prove not only that defendant’s fire was the cause of plaintiff’s damage, but also that defendant was negligent in permitting its spread to plaintiff’s premises. Those concerning actions based on claims other than fire losses merely state the general rule relative to proof by circumstantial evidence which we shall hereinafter consider in detail.
Apropos a discussion of plaintiff’s burden of proof respecting causal connection between defendant’s alleged negligence and plaintiff’s loss is the following language appearing in Perkins v. Texas and New Orleans Railroad Company, 243 La. 829, 147 So.2d 646:
“The burden of proving this causal link is upon the plaintiff. Recognizing that the fact of causation is not susceptible of proof to a mathematical ■certainty, the law requires only that the evidence show that it is more probable than not that the harm was caused by the tortious conduct of the defendant. Stated differently, it must appear that it is more likely than not that the harm would have been averted but for the negligence of the defendant.”
We are thoroughly in accord with the rule of the Rosebery case, supra, to the effect that one who intentionally kindles a fire on his own premises is liable for damages resulting from his negligence in either lighting the fire or permitting its spread to the property of another. We would go even farther in stating that if damage to another’s property is shown to result from an intentionally kindled fire, a rather high degree of care must be imposed upon the party igniting the fire in view of the inherently dangerous nature of fire. However, before the extra duty of care can be imposed, plaintiff must establish the necessary causal connection.
The jurisprudence of this state is well established to the effect that to fulfill his obligation of proving causal connection between damages sustained and defendant’s alleged negligence, plaintiff must produce evidence which excludes, with a fair amount of certainty, every other reasonable hypothesis excepting the one relied on by plaintiff. Bickham v. Wax Lumber Co., La.App., 84 So.2d 60 and cases therein cited; Sollberger v. Walcott, La.App., 101 So.2d 483; O’Pry v. City of Opelousas, La.App., 124 So.2d 333.
In Naquin v. Marquette Casualty Company, 244 La. 569, 153 So.2d 395, the Supreme Court explained the applicable rule in the following language:
“Causation may, of course, be proved by circumstantial evidence. In many instances, it can be proved only by such evidence. Taken as a whole, circumstantial evidence must exclude other reasonable hypotheses with a fair amount of certainty. This does not mean, however, that it must negate all other possible causes. Otherwise, the mere identification by the record of another possibility, although not shown *321 to be causally active, would break the chain of causation.”
The foregoing language cited from the Naquin case, supra, was questioned in obiter dictum contained in North River Ins. Co. v. H. H. Bain Roofing Co., La.App., 30 So.2d 139, but the court therein nevertheless held defendant liable because it found the circumstantial evidence so cogent as to exclude every reasonable hypothesis other than that the fire occurred in the manner charged by plaintiff. In the H. H. Bain Roofing Co. case, supra, the fire occurred on the roof of the house belonging to plaintiff’s subrogor within 45 minutes after defendant’s employees left the job at quitting time. Defendant was engaged in replacing an old wood shingle roof with new material. The old wood shingles were discovered ablaze adjacent to a recovered area of the roof. It was shown that defendant’s employee had been smoking continuously while working and from all the circumstances the court concluded the fire was caused by a burning cigarette or match carelessly tossed by defendant’s employee on the inflammable old roof immediately prior to leaving work.
The circumstances of the Bain case, supra, clearly distinguish it from the case at bar. In the cited authority all other reasonable possibilities were ruled out by proof. The possibility of the fire having originated from within the building from a gas leak or faulty electrical wiring was negatived. The fact that the wooden shingles covering the roof were easily ignited was shown. It was also established there were no fires on adjoining premises and no factories or plants within many blocks from which sparks or cinders were emitted. There was no wind. Spontaneous combustion was ruled out.
In the instant case it appears plaintiff’s shed could not be ignited by a spark or cinder alighting on either the roof or any side of the structure because its roof and sides were of non-combustible corrugated iron. While it is within the realm of possibility that a spark or cinder from defendant’s fire could have been carried to the interior of the shed and there ignited some combustible material, it is not shown with any degree of certainty that the structure did in fact contain materials of such high combustibility as to be readily ignited in such manner. The fire ignited by defendant was approximately 20 feet distant from plaintiff’s shed, the direction and force of the wind is not established with any degree of satisfaction. It is not clear whether the shed was wired for electricity. Spontaneous combustion was not ruled out. Although plaintiff testified the living quarters situated in the shed were unoccupied for at least a year previous to the fire, he acknowledged the structure had been entered by unauthorized persons on several occasions. A gas hot plate was situated in the living quarters which had been partitioned off from the remainder of the shed. It is within the realm of possibility that a vagrant entered the premises and ignited the fire in an attempt to use the gas hot plate or by carelessly tossing about a lighted cigarette or match. Admittedly the latter suggested possibilities are as conjectural and remote as those.advanced by appellant. The burden, however, devolved upon appellant to prove circumstances which would justify the conclusion that appellant’s version was more probable and the other possibilities so much less probable as to rule them out.
Castille v. Cormier, 144 La. 640, 81 So. 210, is also clearly distinguishable from the instant case on its facts. In the cited case, plaintiff recovered damages resulting from a fire which destroyed his store building. It was established that defendant’s steam tractor which operated on coal and firewood was driven near plaintiff’s establishment and stopped 66 feet directly to windward shortly before the fire broke out. The wind direction was shown as was the tractor’s capability for emitting sparks and cinders particularly when being fired (stoked) at intervals of 10 to 15 minutes. It was further shown the spark arrester with which the engine was once equipped had rotted *322 away and was not replaced. In holding defendant liable under such circumstances, the court therein observed:
“We have held heretofore that it does not follow, because a fire occurs after an engine has passed, that the one happening is the necessary consequence of the other, but we have not held that, where a fire occurs, the ignition of which is explicable by the proximity of an engine capable, through negligence, of emitting sparks and cinders, and upon no other theory which has any support in the facts, it is necessary, in order to entitle the owner of the burned property to recover, that he should have followed the spark or cinder from the engine to the property and watched the process of ignition. (Cases cited.)”
Regarding other possibilities which could have been responsible for the fire, the court noted:
“ * * * It is true that a wind blowing from the blacksmith’s shop in the direction of the store might have carried sparks and cinders emitted from the chimney of the shop to the roof of the store, but it is shown that there was no such wind, and it is not shown that there were any such sparks, or that the blacksmith had ever found it necessary to put in a spark arrester. It is also true that, if there had been matches in the garret of the store, they might have been ignited by rats or mice, and that the fire might have been started there; but it is shown that there were no matches in the garret, and that the fire did not start there. To which it-may be added that there is no suggestion that there was fire in the store, or in the vicinity, other than that in the blacksmith shop, to which the fire that destroyed the store could be attributed. * * * ”
In the instant case plaintiff has established with certainty only that defendant intentionally lighted a fire on his premises. It is not shown that circumstances existed which made such action patently dangerous to surrounding property. While plaintiff has shown the mere possibility the fire spread from defendant’s incinerator to plaintiff’s shed, it has not been shown with any degree of certainty that the conflagration resulting in plaintiff’s damage did in fact result from defendant’s fire. Nor is it established that defendant violated any provision of the applicable municipal fire code. Granting plaintiff is not required to exclude every possible hypothesis, we nevertheless must conclude he has failed to exclude other reasonable hypotheses with a fair amount of certainty as required by law.
Accordingly, the judgment of the trial court is affirmed at appellant’s cost.
Affirmed.